[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 10-15537 & 10-15538
_____

D.C. Docket  Nos. 3:10-cr-00173-TJC-JRK-1,
3:10-cr-00039-TJC-JRK-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JAMES LEE EARLY,

Defendant - Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(July 11, 2012)

Before TJOFLAT, MARTIN and HILL, Circuit Judges.

HILL, Circuit Judge:

James Lee Early appeals his 210-month sentence imposed after he plead guilty to robbing two banks using what turned out to be fake bombs. Finding no reversible error, we shall affirm.

I.

James Lee Early plead guilty to two counts of robbing a bank by violence, in violation of 18 U.S.C. § 2113(a) and (d) charged against him in two different, consolidated cases brought in the Middle and Northern Districts of Florida. In exchange for his plea, the United States agreed to dismiss all remaining charges in the two cases and to recommend a sentence at the "low end" of whatever sentencing guidelines range the district court determined.

At the sentencing hearing, the district court determined an undisputed sentencing guidelines range of 78-97 months' imprisonment. The court also heard testimony from two of Early's victims, a statement from Early, and argument from Early's counsel. The United States recommended a sentence at the low end of the guidelines range. The court discussed the relevant sentencing factors located in 18 U.S.C. § 3553(a) and then sentenced him to 210 months' imprisonment. Early objected to the sentence, asserting that it was both procedurally and substantively unreasonable.

2

On appeal, Early claims only that his sentence is substantively unreasonable. We review this claim under a deferential abuse of discretion standard. *Gall v. United States*, 552 U.S. 38 (2007). The party challenging the sentence bears the burden of establishing that the sentence is unreasonable in light of the record and the § 3553(a) factors. *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005). While the district court making such an upward variance must have a justification compelling enough to support the degree of the variance and complete enough to allow meaningful appellate review, we will vacate such a sentence only if "we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Shaw*, 560 F.3d 1230, 1238 (11th Cir. 2009).

## II.

Early's robbery spree, for which he received the sentence challenged in this appeal, began when he threatened a bank teller with a "bomb" and robbed the bank of $4760. Six days later, Early used another fake bomb in robbing a second bank. Three days later, he robbed yet another bank with a fake bomb. Finally, five days later, Early tried to enter yet another bank but was spotted by bank employees who

3

recognized him as the suspect in the previous robberies and who refused to let him in the bank. Early fled but was chased and arrested.

Early has spent his adult life – except for eight months – in prison. His crimes include forgery, petit theft, grand theft, grand theft auto, uttering forged checks, trafficking in stolen property, smuggling, tampering with evidence, obstructing an officer without violence, attempted aggravated battery, aggravated assault, battery on a law enforcement officer, kidnapping, burglary of an unoccupied structure, armed burglary of a dwelling (with a shotgun when the residents were home), armed robbery (while holding a hostage at gunpoint), possession of a handgun as a felon, possession of marijuana, possession of cocaine, and sale/purchase of cocaine. Several of these offenses were committed multiple times. Many were committed while Early was on probation. The bank robberies at issue in this case were committed while he was on bond pending sentencing in an unrelated case. Both of Early's victims who testified in this case reported the lingering effects of their terror during the robberies.

In imposing an above-guidelines sentence on Early, the district court specifically acknowledged the recommendation of the United States to a sentence at the low end of the guidelines range of 78-97 months. But the district court rejected this recommendation, stating that the guidelines did not adequately

account for Early's criminal history because some of the older convictions were not scored and the criminal history score did not reflect the sustained nature of Early's criminal conduct. The court also opined that the range did not adequately account for the number of bank robberies that Early had committed, since the range for one robbery would have been 57-71 months and only increased to 79-97 as the result of three bank robberies.

The court found that Early's use of fake bombs in his bank robberies was "extremely serious," creating terror in the tellers, customers, and inducing the use of bomb squads and causing commerce to shut down. The court observed the need to impose a sentence that reflected the seriousness of Early's crimes, promotes respect for the law, provides just punishment, provides deterrence, and protects the public. The court concluded that "It's obvious that Mr. Early, by his own conduct, has demonstrated that the public needs protecting from him, that – that he – the only way he's deterred is when he's in custody. And I think those are factors which heavily weigh in my evaluation." The court also addressed the need to avoid unwarranted disparities in sentences, but stated that "[i]n this case it's hard to be too concerned about unwarranted sentencing disparity, because . . . this is a situation in which on a repeated basis, over the space of about a week or so, a person robbed banks in a way that put people's lives – put people in fear for their

5

lives." The court concluded by stating:

> the court now being fully advised, and recognizing that the court is going to substantially vary from the recommended advisory guideline range, but doing so advisedly, and for the reasons that I have tried to articulate on this record, and being primarily motivated by the nature and circumstance of the charged offense, the history and characteristics of Mr. Early, and the need to afford both deterrence to criminal conduct and protect the public from further crimes of this defendant, as again I've tried to articulate on this record – those are the primary motivators of my sentence in this case, although I've taken all the 3553(a) factors in to account, including the advisory guidelines.

III.

On this record, we do not find that the sentence imposed by the district court was substantively unreasonable. Although the upward variance was substantial, it was still well below the maximum 900 months that he could have received under the statute. *See United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008) (comparison between statutory maximum and sentence imposed an indicator of reasonableness).

In addition, many of the § 3553(a) factors militate in favor of an upward variance in this case. Early has shown that, for the past 36 years, he has been unable to conform his conduct to the requirements of law. His criminal history is so extensive that he has been incarcerated virtually all of his adult life. When he is out of prison, he commits more crimes – many of them very violent. The upward

6

variance is also supported by Early's disrespect for the law reflected in his recidivism; the need for deterrence; the need to protect society from him; and, the need to promote respect for the law.

Early argues that the district court abused its discretion in finding that the sentencing guidelines range did not adequately account for his criminal history and the number of bank robberies that he committed. This amounts to an argument that the district court gave too little weight to the guidelines range as a relevant sentencing factor under § 3553(a). But we do not substitute our judgment for that of the district court in weighing the relevant sentencing factors absent a clear error of judgment, which Early has not shown. The district court gave great weight to Early's three bank robberies within a week, and to his substantial criminal history. This is not a clear error in judgment. *See Shaw*, 560 F.3d at 1240 (affirming statutory-maximum sentence well above sentencing guidelines range based upon defendant's substantial criminal history).

The district court did not abuse its discretion in fashioning a sentence that it believed was warranted in view of all the relevant sentencing factors. The record supports the sentence and we are not left with the firm conviction that the district court committed a clear error of judgment in weighing these factors and arriving at a sentence of 210 months. Therefore, the judgment of the district court

7

is

AFFIRMED.

MARTIN, Circuit Judge, concurring in the judgment:

Where a sentencing court addresses the factors set out in 18 U.S.C. § 3553(a) and imposes a sentence within the statutory maximum, this court's precedent teaches deference to that judgment on any variance above the Guideline range, no matter how large. See, e.g., United States v. Shaw, 560 F.3d 1230, 1241 (11th Cir. 2009) (upholding a 120-month sentence representing a 224 percent upward variance from the maximum Guideline sentence); United States v. Amedeo, 487 F.3d 823, 834 (11th Cir. 2007) (upholding a 120-month sentence representing a 161 percent upward variance); United States v. Turner, 474 F.3d 1265, 1281 (11th Cir. 2007) (upholding a 240-month sentence representing a 281 percent upward variance). Indeed, in all the cases decided by this court since United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), I have found none in which we vacated an upward variance from the Sentencing Guidelines on reasonableness grounds. For this reason, even though Mr. Early's sentence of 210-months imprisonment represents a 116 percent variance above the 97-month sentence set by the top of his Guideline range and a remarkable 169 percent increase from the 78-month sentence requested by the government itself, I cannot say the panel's decision here is contrary to our precedent.

At the same time, I write separately to note that this Court has declined to

exercise similar deference toward a sentencing court's decision to grant a downward variance. See, e.g., United States v. Jayyousi, 657 F.3d 1085, 1118–19 (11th Cir. 2011) (holding that a 42 percent downward variance was substantively unreasonable); United States v. Irey, 612 F.3d 1160, 1196 (11th Cir. 2010) (en banc) (same); United States v. Pugh, 515 F.3d 1179, 1203 (11th Cir. 2008) (holding that a 100 percent downward variance was substantively unreasonable). This, even where the extent of the variance from the Guideline range was far smaller and where the reasons given by the sentencing court were more substantial.

My reading of these cases tells me that in considering sentences above the Guideline range, we look only to whether the sentencing court seemed to consider the § 3553(a) factors and we ignore whether the court might have disregarded one of the factors or weighed the factors in an unreasonable way. In contrast, for downward variances, we show no such deference and instead scrutinize how a sentencing court applied each and every § 3553(a) factor. We even go so far as to decide for ourselves whether the factors were weighed correctly. See Irey, 612 F.3d at 1196–1225; Pugh, 515 F.3d at 1194–1203.

Sadly for him, Mr. Early's case is a good one to highlight this dichotomy. In downward variance cases such as Irey and Pugh, we vacated sentences on the

ground that they failed in effect to give "real weight" to the Guidelines or to adequately reflect the Guidelines' policy statements and underlying concerns. See Irey, 612 F.3d at 1218–19; Pugh, 515 F.3d at 1199–1201. Yet, in the case of Mr. Early's 116 percent upward variance, our opinion does not mention the fact that the sentencing court essentially cast aside the Guidelines on the basis of policy disagreements.[1] That the sentence imposed reflects no consideration of "pertinent policy statement[s]" of the Sentencing Commission, contrary to 18 U.S.C. § 3553(a)(5), is nowhere acknowledged.

---

[1] After pointing out that the Guideline range only increased from 57–71 months for one bank robbery to 78–97 months for three robberies, the sentencing court opined, "the guidelines, just in the way that they're created, don't really capture the repeated criminal conduct in the way that—that I think they ought to." Yet, the Guidelines expressly aim to avoid a system in which each additional count proportionately increases the proper punishment. See U.S.S.G. ch. 1, pt. A, introductory cmt. § 4(e), p.s. (2010). The goal instead is to "produce declining marginal punishment," id. § 3D1.4 cmt. background, by taking the most serious offense "as a starting point," and then "provid[ing] incremental punishment for additional criminal conduct," id. ch. 3, pt. D, introductory cmt. This results in a system in which "[t]he amount of the additional punishment declines as the number of additional offenses increases." Id. (noting that this approach is intended to apply to "independent instances of assault or robbery"). Disagreeing with this policy, the sentencing court simply set the Guidelines aside.

The other explanation given by the court for why the Guidelines failed to reflect the seriousness of Mr. Early's conduct "accurately" was because the four-level enhancement for use of a "dangerous weapon" during a robbery "understate[d]" the tremendous fear that Mr. Early had caused. But it is clear from the Guidelines' carefully calibrated "hierarchy of culpability for varying degrees of involvement," United States v. Miller, 206 F.3d 1051, 1053 (11th Cir. 2000), that the Guidelines intend to distinguish fake bombs from real bombs, reserving harsher punishment for the latter. Compare U.S.S.G. § 2B3.1(b)(2)(D) (four-level enhancement for using a fake bomb) with id. § 2B3.1(B)(2)(A)–(C) (enhancement of five to seven levels for using a real bomb). Thus, this was not a case where the Guidelines failed to take into account the special characteristics of Mr. Early's crime. Instead, the sentencing court simply did not agree with the Guidelines' calibrated distinction between real and fake bombs.

11

Neither does this opinion comment on the sentencing court's own views on deterrence and public protection,[2] which led it to add almost a decade to Mr. Early's maximum Guideline sentence, almost tripling the sentence that the government had asked for. Instead of leaving prison in his early 60s, Mr. Early is now scheduled to leave prison in his early 70s. But I see nothing in this record to suggest why Mr. Early would be substantially more likely to threaten the public than another convicted felon released from prison in his early 60s.[3] In sum, even though our case law purportedly requires "a significant justification" to support a "major departure" from the Guidelines, see Pugh, 515 F.3d at 1201, the panel's

---

[2] In refusing a Guideline sentence, the court emphasized that Mr. Early had convictions which were "too old" to figure into his Guideline calculation. But this is not a reason to disregard the Guidelines, which speak directly to this issue. If an upward departure is warranted because the defendant's criminal history is not adequately captured, the Guidelines advise to apply the criminal history category that "most closely resembles" the defendant's. U.S.S.G. § 4A1.3(a)(4)(A). Where an upward departure from the highest criminal history category is warranted, "the court should structure the departure by moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case." Id. § 4A1.3(a)(4)(B). By giving Mr. Early a sentence that was five years longer than even the highest Guideline sentence for which Mr. Early would have been eligible had he been assigned the maximum criminal history category (VI), the court appears to have rejected this framework.

[3] Mr. Early is neither a sophisticated terrorist nor a sex offender. He therefore does not fall into the category of criminals for whom we have rejected the assumption that "recidivism ordinarily decreases with age." Jayyousi, 657 F.3d at 1117; see Irey, 612 F.3d at 1213–16. That is not to say that an upward variance was unreasonable given Mr. Early's criminal history. What I question was the reasonableness of adding nearly a decade of prison time to Mr. Early's sentence even though under the maximum Guidelines sentence he would not have left prison until his early 60s. We, as a Circuit, should not ignore § 3553(a)'s clear prohibition against imposing a sentence "greater than necessary[] to comply with the purposes set forth" in § 3553(a)(2). 18 U.S.C. § 3553(a).

review of Mr. Early's 116 percent upward variance evinces little indication that such a requirement even applies here.

Absent correction, I fear this Court's different approach for reviewing up and down sentence variances may erode public trust in our work.