[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-16540
_____

D.C. Docket No. 7:11-cr-00057-HL-TQL-2

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

LEE DOUGHERTY,

Defendant–Appellant.

_____

No. 13-10066
_____

D.C. Docket No. 7:11-cr-00057-HL-TQL-1

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

DYLAN STANLEY,

Defendant–Appellant.

_____

No. 13-10092
_____

D.C. Docket No. 7:11-cr-00057-HL-TQL-3

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

RYAN DOUGHERTY,

Defendant–Appellant.

_____

Appeals from the United States District Court
For the Middle District of Georgia
_____

(June 20, 2014)

Before TJOFLAT and PRYOR, Circuit Judges, SCOLA,[*] District Judge.

SCOLA, District Judge:

Siblings Lee Dougherty, Ryan Dougherty, and Dylan Stanley appeal their

sentences of 428 months, imposed after they pled guilty to participating in an

armed bank robbery.  Lee Dougherty and Dylan Stanley have challenged both the

---

[*] Honorable Robert N. Scola, Jr., United States District Judge for the Southern District of
Florida, sitting by designation.

2

procedural and substantive reasonableness of their sentences. Ryan Dougherty has challenged only the substantive reasonableness of his sentence.

For reasons set forth more fully below, we vacate the sentences of Lee Dougherty and Dylan Stanley and remand their cases for resentencing because the district court improperly applied a six-level enhancement under U.S.S.G. § 3A1.2(c) for assaulting a police officer during immediate flight from an offense. Ryan Dougherty affirmatively disavowed any challenge to the procedural reasonableness of his sentence in his appeal and, thus, has waived his right to challenge the application of this enhancement. Having reviewed his sentence for substantive reasonableness, we affirm Ryan Dougherty's sentence.

## I.    BACKGROUND

On August 1, 2011, Ryan Dougherty was sentenced to a term of community control and probation and was classified as a sex offender for State crimes arising out of his sending sexually explicit text messages to a minor. As a term of his probation, Ryan was required to wear an ankle bracelet and was placed on location monitoring. At the time, Ryan was living with his pregnant girlfriend, Amber, and was very upset about the restrictions of the community control. That same evening, he discussed his concerns with his sister, Lee Dougherty, and his brother, Dylan Stanley. The trio decided to flee to Mexico and earn money on the way by selling guns and robbing a bank in Georgia.

3

In the early morning hours of August 2, 2011, they embarked on a violent, eight-day, multi-state crime spree. They took the first step by cutting the electronic monitoring device from Ryan's ankle. Based upon their subsequent conduct over the next eight days, they also severed their respect for the law and their concern for the lives and safety of all who stood as an obstacle to their odyssey. In the middle of the night, they loaded Amber's car with firearms and ammunition. They then took the car without her permission and left Brevard County headed for Georgia. At approximately 7:00 a.m., a Florida police officer observed the car speeding and initiated a traffic stop. Without provocation, Stanley fired at the officer with a pistol. When the pistol jammed, he began shooting at the officer with an assault rifle. Fortunately, the officer was not wounded; however, one of the bullets disabled the officer's car, and the Dougherty crew was able to flee the scene.

They arrived at the CertusBank in Valdosta, Georgia later that day. All three exited the car and left the car doors open and the engine running. They entered the bank wearing masks and sunglasses to cover their faces. Lee was carrying a 9mm machine pistol; Stanley was carrying an AK-47 Champion assault rifle; and Ryan was carrying a .45 caliber pistol. As the trio entered the bank, they shouted threats to the bank employees and told them to get on the floor or they would be killed. For no reason other than to terrorize the victims, Lee and Stanley each fired a shot into the ceiling of the bank. Ryan jumped onto the teller counter with a red and

4

black tool bag and stepped on one of the tellers. After Ryan obtained over $5000 in United States currency and placed it in the tool bag, the trio fled the bank. Witnesses thought the license tag of the get-away car appeared to be a New York state tag. Law enforcement agencies posted a be-on-the-lookout bulletin, which was broadcast on national media outlets.

The Dougherty crew returned to north Florida and then drove through back roads in Florida, Alabama, Mississippi, Louisiana, Arkansas, Texas, Iowa, Nebraska, and Wyoming before eventually arriving in Colorado. While traveling through Texas, they stole a Texas license plate from a car on the side of the road. After arriving in Colorado, they slept in their car and camped outdoors for several days. They also stole a Colorado license plate from a car parked on the side of the road near Las Animas, Colorado.

On August 9, 2011, a sporting goods store employee, who had seen the national reports about the case, recognized Stanley in the store and alerted the police. Early the following morning, Ryan noticed a plain clothes officer at a gas station. The trio quickly left, with Ryan driving, and the officer followed. A high-speed chase involving officers from several agencies ensued. The chase covered over 20 miles at speeds upwards of 125 miles per hour. Ryan drove erratically, drove on the shoulder of the road to pass other cars, and sped through a construction zone. Stanley fired shots at the pursuing officers during the car chase.

5

The chase ended only after the car ran over police-placed spike strips and flipped over.  Even this did not stop the trio.  Lee fled the car with a machine pistol and, as an officer ordered her to stop, she raised the gun toward the officer.  The officer shot her in the thigh and subdued her.  Ryan fled the crash scene on foot and pointed his finger at the pursuing officers as if his finger were a gun before he was arrested.  Stanley attempted to gain access to the trunk of the car, where the trio had stored guns and ammunition, before he was arrested.

The police searched the car and seized $3,430 (including $450 in "bait bills" taken from the bank), two AK-47 type rifles, an assault pistol, two shotguns, two handguns, a machine pistol, hundreds of rounds of ammunition, and many loaded magazines, some of which were large-capacity.  The officers also found a New York license plate, a Colorado license plate, numerous sun glasses, and a red and black tool bag similar to the one used during the robbery.

Ballistics tests revealed that the bullets fired in the bank in Valdosta were fired from the weapons recovered from the Defendants.

Several months later, while in custody in Colorado awaiting trial for the Colorado events, and after he had been indicted in this case, Stanley attempted to escape from jail.

Lee pled guilty, and the district court imposed a sentence of 428 months.  The district court determined that the advisory guideline range was 87–108 months

6

plus a consecutive 120 months for the 18 U.S.C. § 924(c) conviction for a total of 207–228 months.  The district court's calculation included a six-level enhancement under U.S.S.G. § 3A1.2(c)(1) for assaulting a law enforcement officer and creating a substantial risk of death or serious bodily harm during immediate flight as well as a two-level enhancement under U.S.S.G. § 3C1.2 for creating a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer.  The district court varied above the advisory guidelines range in imposing the 428-month sentence.

Stanley pled guilty and was also sentenced to 428 months.  The district court determined that his advisory guideline range was 87–108 months, plus a consecutive 120 months for the § 924(c) conviction for a total of 207–228 months. The district court included a six-level enhancement under U.S.S.G. § 3A1.2(c)(1) for assaulting a law enforcement officer and creating a substantial risk of death or serious bodily harm during immediate flight as well as a two-level enhancement under U.S.S.G. § 3C1.2 for creating a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer. Stanley also received a two-level enhancement under U.S.S.G. § 3C1.1 for having willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the offense of conviction based upon his attempt to escape from jail

7

while in custody in Colorado. The application notes cite as an example of covered conduct "escaping or attempting to escape from custody before trial or sentencing." U.S.S.G. § 3C1.1 cmt. n.4(E) (2012). The district court varied above the advisory guidelines range in imposing the 428-month sentence.

Ryan pled guilty, and the district court imposed a sentence of 428 months. The district court determined that Ryan's advisory guideline range was 100–125 months plus a consecutive 120 months for the § 924(c) conviction for a total of 220–245 months. The district court included a six-level enhancement under U.S.S.G. § 3A1.2(c)(1) for assaulting a law enforcement officer and creating a substantial risk of death or serious bodily harm during immediate flight as well as a two-level enhancement under U.S.S.G. § 3C1.2 for creating a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer. The district court varied above the advisory guidelines range in imposing the 428-month sentence.

## II. STANDARD OF REVIEW

This Court reviews a district court's interpretation of a sentencing guideline provision or term *de novo*. *United States v. Mandhai,* 375 F.3d 1243, 1247 (11th Cir. 2004). We review a district court's findings of fact for clear error, but review its application of the facts to the sentencing guidelines *de novo. Id.* We review the final sentence for reasonableness, which is tantamount to an abuse-of-discretion

8

standard of review.  *United States v. Pugh,* 515 F.3d 1179, 1188–91 (11th Cir. 2008).

## III.    PROCEDURAL REASONABLENESS OF THE SENTENCES

All three Defendants objected to the district court's guidelines calculations below.  However, only Lee and Stanley have properly raised those objections in their appeals.  Although Ryan's brief makes some reference to his disagreement with the district judge's guidelines calculations, he does not cite to any legal authority, does not devote a section of the brief to this issue, and, more significantly, his attorney specifically acknowledged, both in his brief and at oral argument, that Ryan is challenging only the substantive reasonableness of the sentence.  This Court will not review claims that a party has abandoned.  *See United States v. Jernigan*, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003).   In *Jernigan*, the appellant made four passing references to the district court's ruling on an evidentiary issue under Federal Rule of Evidence 404(b), each reference embedded under different topical headings.  *Id.*  This Court held that he abandoned the argument that the district court erred in its ruling because he did not "devote[] a discrete section of his argument to [the] claim[]."  *Id.*  Similarly, this Court finds that Ryan has abandoned his arguments as to the procedural reasonableness of his sentence.

9

We now address the procedural reasonableness issues as they relate to Lee and Stanley.

A sentencing court must consider the nature and circumstances of the offense and the history and characteristics of the defendant, and impose a sentence sufficient, but not greater than necessary, to account for the need for a sentence to reflect the seriousness of the offense, promote respect for law, provide just punishment, afford adequate deterrence, and to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. §§ 3553(a)(1)–(2), (6). A sentence can be procedurally unreasonable if the district court makes errors such as (1) failing to calculate (or improperly calculating) the guideline range, (2) treating the Guidelines as mandatory, (3) failing to consider the § 3553(a) factors, (4) selecting a sentence based on clearly erroneous facts, or (5) failing to adequately explain the chosen sentence—including an explanation for any deviation from the guideline range. *Gall*, 552 U.S. at 51, 128 S. Ct. at 597, 169 L.Ed.2d at 457–58. Nothing requires the district court to discuss each of the § 3553(a) factors, and an acknowledgment that it has considered each will suffice. *United States v. Amedeo*, 487 F.3d 823, 832 (11th Cir. 2007).

10

In this case, Lee and Stanley claim that their sentences were procedurally unreasonable based upon the district court's improper calculation of the guideline range.

### A. The district court erred in applying the six-level enhancement for assault during immediate flight.

A defendant is subject to a six-level enhancement if she or a person for whose conduct she is accountable assaulted a law enforcement officer during "the course of the offense or an *immediate flight* therefrom" in a manner creating a substantial risk of serious bodily injury. U.S.S.G. § 3A1.2(c)(1) (emphasis added). The Guidelines do not define "immediate flight." *See* U.S.S.G. § 3A1.2. The district court determined that continuous flight was equivalent to immediate flight and, since the Defendants were continuously fleeing from the bank robbery for eight days, the enhancement for immediate flight should apply. Lee and Stanley argue that the district court improperly applied this enhancement. They argue that "immediate flight" cannot include an assault in Colorado more than a week after the bank robbery in Georgia.

This Court has not previously interpreted the term "immediate flight." Since "immediate flight" is not defined by the Guidelines, we are bound to give the term its ordinary meaning. *See United States v. Digiorgio*, 193 F.3d 1175, 1178 (11th Cir. 1999) (using Black's Law Dictionary definition of "ransom" where the Guidelines did not define that term). Black's Law Dictionary defines "immediate"

11

as "occurring without delay; instant." *Black's Law Dictionary* 751 (7th ed. 1999). Another frequently cited dictionary defines "immediate" as "occurring, acting or accomplished without loss of time; made or done at once; instant." *Webter's Third New International Dictionary* 1129 (Unabridged ed. 1986); 7 *Oxford English Dictionary* 681 (2d ed. 1989) ("occurring, accomplished, or taking effect without delay or lapse of time; done at once; instant"). Under each definition, the Defendants' assaults against the police officers in this case, occurring eight days after, and thousands of miles and several states away from the Georgia robbery, no matter how disturbing or egregious, do not meet the ordinary meaning of the term "immediate." We find that the district court improperly applied the six-level enhancement under § 3A1.2(c). We therefore vacate the sentences of Lee and Stanley and remand for resentencing without the application of this enhancement.

### B. The district court correctly applied the enhancement for recklessly creating substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer.

Under U.S.S.G. § 3C1.2, a defendant is subject to a two-level enhancement if she recklessly creates a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer. U.S.S.G. § 3C1.2. Unlike the enhancement for assaulting a police officer during immediate flight under U.S.S.G. § 3A1.2(c), there is no requirement of immediacy in the § 3C1.2 enhancement. And, "during flight" is construed broadly and is applicable

where the conduct occurs in the course of resisting arrest.  U.S.S.G. § 3C1.2 cmt. n.3 (2012).  The facts of this case establish that Lee and Stanley fled from a law enforcement officer during the chase in Colorado.

A defendant sentenced under this section is accountable for her own conduct as well as conduct that she aided or abetted, counseled, commanded, induced, procured, or willfully caused.  *Id.* cmt. n.5 (2012).   But a defendant cannot be held responsible for another's conduct under § 3C1.2 without some form of direct or active participation.  *See United States v. Cook*, 181 F.3d 1232, 1235 (11th Cir. 1999).  Mere foreseeability of the conduct is insufficient.  *See id.*  This Court requires "a specific finding [] that the defendant actively caused or procured the reckless behavior at issue."  *United States v. Johnson*, 694 F.3d 1192, 1196–97 (11th Cir. 2012) (quoting *Cook*, 181 F.3d at 1235).

Lee and Stanley each argue that they cannot be held responsible for the danger created by Ryan's reckless driving because the evidence is insufficient to establish that either Lee or Stanley actively caused or procured Ryan's reckless behavior.  But we need not decide that issue in this case because both Lee and Stanley personally engaged in conduct that recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer.  Stanley fired the shots at the police officers during the car

13

chase, and Lee pointed a machine pistol at a police officer after the car crashed. Each of these acts falls within the purview of § 3C1.2.

Lee and Stanley also argue that their convictions for violating 18 U.S.C. § 924(c) preclude further enhancements based upon the possession, brandishing, use or discharge of a firearm. However, the § 924(c) conviction and the § 3C1.2 adjustment are based upon different conduct. The § 924(c) convictions were based upon their discharge of a firearm at the bank in Georgia while the district court applied a § 3C1.2 enhancement because Stanley fired shots at police officers in Colorado, and Lee raised her gun at a police officer in Colorado.

Defendants rely on Comment 4 to U.S.S.G. § 2K2.4, which provides that where a sentence includes a conviction and enhancement for a violation of 18 U.S.C. § 924(c), the Court may not "apply any specific offense characteristic for possession, brandishing, use or discharge of any explosive or firearm when determining the sentence for the underlying offense." U.S.S.G. § 2K2.4 cmt. n.4 (2012). The Comment goes on to state that "[a] sentence under this guideline accounts for any explosive or weapon enhancement for the underlying offense of conviction, including any such enhancement that would apply based on conduct for which the defendant is accountable under 1.3 (Relevant Conduct)." *Id*.

The Defendants' reliance on Comment 4 to U.S.S.G. § 2K2.4 is misplaced. U.S.S.G. § 2K2.4 provides that where a sentence includes a conviction and

14

enhancement for a violation of 18 U.S.C. § 924(c), the Court may not "apply any *specific offense characteristic* for possession, brandishing, use or discharge of any explosive or firearm when determining the sentence for the underlying offense." U.S.S.G. § 2K2.4 cmt. n.4 (2012) (emphasis added).  However, "specific offense characteristics" are delineated in Chapter Two.  *See* U.S.S.G. §1B1.1(a)(2) (instructing that the base offense level and any appropriate specific offense characteristics are to be applied in Chapter Two).  The two-level adjustment under § 3C1.2 is an obstruction adjustment; it is not a specific offense characteristic that might be in conflict with U.S.S.G. § 2K2.4, and it is, therefore, not prohibited by Comment 4.  The district court properly applied the two-level adjustment under § 3C1.2 to both Lee and Stanley.

### C. The district court properly applied the sentence enhancement for obstruction of justice for Stanley's attempt to flee county jail.

Stanley argues that his attempt to flee the county jail in Colorado several months after his arrest did not warrant a two-level enhancement under § 3C1.1.  He claims that his attempt to flee related only to the Colorado state charges and not the Georgia bank robbery.

Under U.S.S.G. § 3C1.1, a defendant's offense level is increased by two if he willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or

15

sentencing of the offense of conviction.  The application notes cite as an example of covered conduct "escaping or attempting to escape from custody before trial or sentencing."  U.S.S.G. § 3C1.1 cmt. n.4(E) (2012).  Avoiding or fleeing from arrest, however, is typically not covered.  *Id.* cmt. n.5(D) (2012).

In *United States v. Alpert*, 28 F.3d 1104, 1106–07 (11th Cir. 1994) (en banc), relied on by Stanley, this Court considered a § 3C1.1 enhancement applied when the defendants left town during plea negotiations without notifying the government.  The government in that case had withheld indictment, intending to proceed later by information.  *Id.* at 1106.  This Court concluded that the enhancement did not apply to persons engaged in criminal activity who learn of an investigation and simply disappear to avoid arrest.  *Id.* at 1107.  That case was remanded for further consideration because the enhancement could apply if the district court made findings to support its inference that the defendants' conduct obstructed justice.  *Id.* at 1108.

*Alpert* is inapplicable here.  That case involved flight before indictment when the defendants were not incarcerated.  *See id.* at 1106–07.  Here, Stanley was incarcerated and indicted before his escape attempt.  Under the plain language of the application note, Stanley is properly subject to this enhancement because he was attempting to escape from custody before trial or sentencing.  *See* U.S.S.G. § 3C1.1 cmt. n.4(E) (2012).

16

## IV.    SUBSTANTIVE REASONABLENESS OF THE SENTENCES

Because we remand Lee's and Stanley's cases for resentencing without the application of the six-level enhancement under § 3A1.2(c), the Court need not reach the issue of the substantive reasonableness of their sentences.  We now turn to Ryan's claim that his sentence is substantively unreasonable.

This Court reviews the reasonableness of a sentence under a deferential abuse-of-discretion standard.  *Gall*, 552 U.S. at 41, 128 S. Ct. at 591, 169 L.Ed.2d at 451–52.  This Court considers whether the sentence was substantively reasonable in light of the totality of the circumstances.  *Id.* at 51, 128 S. Ct. at 597, 169 L.Ed.2d at 458.  The party challenging the sentence has the burden of showing that it is unreasonable in light of the record and the § 3553(a) factors.  *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010).  Generally, the weight accorded to any of those factors is committed to the sound discretion of the district court, and this Court will not substitute its judgment in weighing the relevant factors.  *Amedeo*, 487 F.3d at 832 (quotation omitted).   The district court must evaluate all of the § 3553(a) factors, but it may "attach great weight to one factor over others."  *United States v. Shaw*, 560 F.3d 1230, 1237 (11th Cir. 2009) (citation omitted).  This Court will defer to the district court's judgment regarding the weight to be given to the § 3553(a) factors unless the district court has made "a clear error of judgment" and has imposed "a sentence that lies outside the range of

17

reasonable sentences dictated by the facts of the case." *United States v. McBride,* 511 F.3d 1293, 1297–98 (11th Cir. 2007) (quotation omitted).

A district court making an upward variance must have a justification compelling enough to support the degree of the variance and complete enough to allow meaningful appellate review, and this Court will vacate such a sentence only if "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence [] outside the range of reasonable sentences dictated by the facts of the case." *United States v. Early*, 686 F.3d 1219, 1221 (11th Cir. 2012) (quoting *Shaw*, 560 F.3d at 1238). The district court may consider facts that were taken into account when formulating the guideline range for the sake of a variance. *United States v. Rodriguez*, 628 F.3d 1258, 1264 (11th Cir. 2010); *see also Early*, 686 F.3d at 1223. A sentence imposed well below the statutory maximum penalty is an indicator of a reasonable sentence. *See United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008). In sum, "a district court abuses its discretion when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *Irey*, 612 F.3d at 1189 (quoting *United States v. Campa*, 459 F.3d 1121, 1174 (11th Cir. 2006) (en banc)).

18

Ryan argues that his sentence was substantively unreasonable on three grounds.  First, he contends that the district court did not provide sufficient justification for the extensive upward variance.  He claims that he was not in immediate flight from the bank robbery when he was caught and that he did not put anyone at risk of bodily harm because there was no evidence that (1) he brandished or discharged a firearm in Colorado, or (2) other people were on the road during the high-speed chase.  He further claims that he did not have as extensive a criminal history as defendants in other cases where the district court had varied upward to a significant degree.

Second, Ryan asserts that the district court placed undue weight on his criminal history, as compared to other relevant factors.  Ryan emphasizes that most of his convictions occurred when he was 18 or younger, were low-culpability offenses, and that his criminal history should not have been the basis of an upward variance because the guidelines adequately accounted for his criminal history.  Additionally, he claims the district court should have considered the abuse that Ryan suffered from his stepfather, which affected his mental health and his use of substances from a very young age.

Third, Ryan asserts that the district court's significant upward variance created unwarranted disparities with a similarly situated defendant in another

19

criminal case citing an unpublished opinion of this Court: *United States v. Sihwail*, 506 F. App'x 955, 956 (11th Cir. 2013).

Ryan has not met his burden of showing that his sentence was unreasonable in light of the record and § 3553(a). *See Tome*, 611 F.3d at 1378. His total sentence of 428 months' imprisonment, although a significant upward variance from the top of his guideline range, was well below the possible total sentence of life imprisonment, as the district court noted, and his sentences for each count were also below the respective statutory maximums. *See* 18 U.S.C. § 924(c)(1)(A)(iii) (providing for maximum sentence of life in prison), 18 U.S.C. § 2113(d) (providing 25-year maximum prison sentence).

The district court's stated reasons were compelling enough to justify the significant upward variance and complete enough to allow meaningful review. *See Early*, 686 F.3d at 1221–22. In discussing the seriousness of the offense and the need to promote respect for the law, the district court expressed particular concern about the number and type of firearms in the robbery and the number of officers and civilians put at risk of death or serious injury during the course of Ryan's flight in Colorado. The district court also described this as a "crazy, dangerous thing to do" and stated in its opinion that "it was a miracle that nobody was killed."

From the pre-sentence investigation report (PSI), the district court knew that Ryan and his codefendants brandished guns in the bank, that those weapons

20

included an AK-47 assault rifle, and that his codefendants fired shots.  The chase in Colorado occurred shortly after 9:00 AM on a weekday and went on for over 20 miles on an interstate highway.  Ryan drove erratically, reached speeds of up to 125 miles per hour, passed other cars on the shoulder, and sped through a construction zone.  Additionally, multiple shots were fired at the pursuing officers.  Under these circumstances, the district court's reasons sufficiently justified its significant upward variance.  *See id*.

Other factors that the district court knew of, which are part of the totality of the circumstances, also justified the significant upward variance.  Even before the bank robbery, Ryan and his codefendants had fled from a Florida police officer, and Dylan had shot ten rounds into that officer's car.  *See* 18 U.S.C. § 3553(a)(2)(A).  The district court's concern for protecting the public also contributed to its decision to vary upward, and the record shows that its concern was well-founded.  *See* 18 U.S.C. § 3553(a)(2)(C).  Ryan was on probation for a sex offense involving a minor when he committed the offenses at issue on appeal, and, before setting out for Florida, he disabled his ankle monitor.  On this record, the district court did not abuse its discretion in imposing a significant upward variance.  *See Early*, 686 F.3d at 1221.

The record does not support Ryan's argument that the district court placed undue weight on his criminal history.  Nothing in the district court's explanation at

21

the sentencing hearing shows that it believed Ryan's criminal history, or any particular event in his history, was a primary basis for the upward variance. Rather, the district court focused on the number and type of firearms involved in the offense and the number of people put at risk by Ryan's and his codefendants' conduct. Accordingly, Ryan's argument is unavailing. To the extent Ryan objects to the factual basis for any of the convictions used to make up his criminal history, he is barred from raising those arguments on appeal as he did not object to those facts at sentencing. *See United States v. Wade*, 458 F.3d 1273, 1277 (11th Cir. 2006). Likewise, he is barred from arguing that there were no other cars on the road in Colorado because the PSI states that he passed other cars on the shoulder during the chase, and he did not object to that fact. *Id.* To the extent he attempts to argue that the district court miscalculated his criminal history, his waiver of any dispute as to the procedural reasonableness of his sentence bars such an argument. Additionally, although Ryan asserts that the district court should have considered the childhood abuse that he suffered, the district court expressly stated that Defendants' traumatic childhood did not explain or excuse their conduct here.

Ryan's sentence was substantively reasonable. The court stated that it had considered the § 3553 factors, specifically mentioning Ryan's history, and characteristics, nature, and circumstances of the offense. *See Amedeo*, 487 F.3d at 832. It sentenced Ryan to 228 months for Count One, six years less than the 25-

22

year maximum, and 200 months for Count Two—well below the maximum sentence of life. This is indicative of a reasonable sentence. *See Gonzalez*, 550 F.3d at 1324.

Finally, Ryan's argument concerning unwarranted sentencing disparities is unpersuasive. "A well-founded claim of disparity [between sentences] assumes that apples are being compared to apples." *United States v. Docampo*, 573 F.3d 1091, 1101 (11th Cir. 2009) (citation omitted). Ryan does not argue that there was any unwarranted disparity between himself and his codefendants, but rather focuses on another defendant in an unpublished case that involved bank robbery. But because the case on which he relies, *Sihwail*, 506 F. App'x 955, was an unpublished decision, it does not bind this Court. *See* 11th Cir. R. 36-2. And, in any event, that case does not persuasively support Ryan's argument because (1) it did not involve the discharge of a firearm during and in relation to a crime of violence under § 924(c)(1)(A)(iii), and (2) in that case, this Court affirmed the district court's imposition of a 230-month sentence, which was double the defendant's highest possible guideline sentence. Ryan's sentence of 428 months is less than double the highest possible guideline sentence he was facing. Accordingly, Ryan has not shown that his 428-month sentence created any unwarranted sentencing disparities.

23

## V. CONCLUSION

The sentences of Lee Dougherty and Dylan Stanley are VACATED and their cases are REMANDED for further proceedings consistent with this opinion.

The sentence of Ryan Dougherty is AFFIRMED.