[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-12124

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

GERARDO GOMEZ-LUBO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:19-cr-00164-WFJ-SPF-2

_____

Before LUCK, TJOFLAT, and ANDERSON, Circuit Judges.

PER CURIAM:

Gerardo Gomez-Lubo appeals the substantive reasonableness of his 180-month, above-guideline-range sentence for conspiracy to distribute 5 kilograms of more of a mixture and substance containing a detectable amount of cocaine knowing and intending that it would be unlawfully imported into the United States.  He argues that his sentence, which was a 29-month upward variance from the guideline range, was substantively unreasonable because the District Court failed to consider several relevant factors, considered an improper fact, and failed to adequately justify the upward variance.

## I.

In 2019, a grand jury in the Middle District of Florida indicted Gerardo Gomez-Lubo and Piero Antonio Lubo-Barros on one count of conspiracy to distribute five kilograms or more of cocaine and knowing and intending that such substance would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959, 963, and 960(b)(1)(B)(ii).  Gomez-Lubo, a Columbian citizen, was arrested in Panama in September 2019, pursuant to a provisional arrest warrant. He was extradited to the United States by the DEA and arrived in Tampa, Florida, where he was to be held, on March 2, 2021.  The District Court held Gomez-Lubo to be detained pending trial because a rebuttable presumption that no condition or combination of conditions would reasonably assure

Gomez-Lubo's appearance applied under 18 U.S.C. § 3142(e)(3)(A),[1] and Gomez-Lubo did not rebut that presumption.

Gomez-Lubo pleaded guilty pursuant to a written plea agreement. As relevant here, the plea agreement included a waiver of Gomez-Lubo's right to appeal the sentence, except in the event that the sentence exceeded the guideline range determined by the Court.

The probation office prepared a presentence investigation report ("PSR") with respect to Gomez-Lubo. According to the PSR, since December 2016, American and Columbian law enforcement agencies had been investigating multiple drug trafficking organizations that would acquire cocaine, typically from Colombia, and then arrange for its transportation into the United States. Beginning in September 2017 and continuing through April 2019, Lubo-Barros and Gomez-Lubo were involved in a drug trafficking conspiracy that exported cocaine via container vessels and cruise ships to ports in Mexico, Central America, and the United States. Lubos-Barros, in Colombia, led the organization of 12 to 15

---

[1] 18 U.S.C. § 3142(e)(3)(A) states, in pertinent part: "Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required . . . if the judicial officer finds that there is probable cause to believe that the person committed . . . an offense for which a maximum term of imprisonment of ten years or more is prescribed in the . . . Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.)."

members in Panama; Gomez-Lubo was a transporter based in Colombia who coordinated maritime shipments of cocaine.

In March 2018, law enforcement agents seized 15 kilograms of cocaine from a vessel in Panama. Judicially authorized wiretaps showed that Lubo-Barros and Gomez-Lubo coordinated the delivery of the cocaine; they also showed the pair discuss the seizure of the cocaine by law enforcement and their joint plans for reporting the incident to their associates and safeguarding and recovering property in Panama. Still other wiretaps had Lubo-Barros and Gomez-Lubo discussing the transportation of cocaine, drug debts, plans to secure the arrival of cocaine, the price of cocaine in various countries, and currency transfers. The wiretaps also revealed that the conspiracy imported cocaine to Florida, Texas, California, Hawaii, and throughout the Caribbean. Both Lubo-Barros and Gomez-Lubo were arrested—the former in Costa Rica in 2021, the latter in Panama in 2019.

In calculating Gomez-Lubo's total offense level the PSR indicated a base level 32 for an offense under 21 U.S.C. §§ 959 and 963. The probation officer assessed a three-level increase because Gomez-Lubo was a involved in a drug trafficking organization that include approximately 12 to 15 participants. Pursuant to the plea agreement, the PSR included a three-level decrease for acceptance of responsibility. Gomez-Lubo's total offense level was 32. Gomez-Lubo's criminal history score was listed as zero and his criminal history category was I. Based upon a total offense level of 32 and a criminal history category of I, Gomez-Lubo's guideline

range was 121 to 151 months' imprisonment.[2]  The PSR also noted that Gomez-Lubo's family ties and responsibilities could warrant a sentence below the advisory guideline range.  Neither the government nor Gomez-Lubo filed any objections to the PSR.

At the sentencing hearing, both parties again indicated that they had no objections to the PSR, and the Court adopted the guidelines calculations and factual statements in the PSR.  The Court found the guideline range to be 121 to 151 months' imprisonment with a five-year term of supervised release.

The government argued that the scope of the drug trafficking conspiracy in this case was "very large," as they discussed the distribution of cocaine all over South America, the Caribbean, and into the United States.  The government also argued that while Gomez-Lubo was not the leader of the conspiracy, he appeared to be Lubo-Barros's right-hand man and had direct influence in the conspiracy.  According to the government, the PSR was very conservative in terms of the amount of cocaine involved, and if they had gone through all of the wiretaps the quantity would be greater than 15 kilos.  In that case, Gomez-Lubo would have wound up with a guideline range that began with 188 months instead of 121.  Ultimately, though, because Gomez-Lubo cooperated, the government requested a sentence in the middle of the guideline range.

Gomez-Lubo's attorney requested a sentence of either 120 months, or the low-end of the guideline range, 121 months.  The

---

[2] The statutory range was ten years to life.

attorney again reiterated that there were no objections to the PSR, but also noted that Gomez-Lubo has zero criminal history points, had a fruitful meeting with authorities, hoped to provide more information to help the government in the future, and was trying to set up a Rule 35 meeting.[3]  Ultimately, Gomez-Lubo's attorney stated that Gomez-Lubo had learned from his ways and would not be back in front of the Court.

Gomez-Lubo allocuted on his own behalf.  He apologized to the Court, to the prosecutor, and to the drug enforcement agencies who investigated him. He stated that he had been in jail for a thousand days or more, and that the first 18 months of his incarceration were in Panama, where he had no public services, no sun, and was in his cell for 23 hours a day.  He witnessed shootings and gang wars in jail.  Upon his arrival in the United States he had done his best to cooperate with the authorities.  He asked the Court to give him an opportunity to be able to recover with a fair sentence that showed his willingness to cooperate.

The District Court stated that Gomez-Lubo's case was "a bit of an illustration of how the guidelines are sort of out of whack." The Court noted it had heard the statements of both parties, had reviewed the PSR, and had considered the guidelines in 18 U.S.C. §§ 3553 and 3551.  The Court sentenced Gomez-Lubo to a term of

---

[3] If a defendant provides substantial assistance in investigating or prosecuting another person, Federal Rule of Criminal Procedure 35 allows a district court, upon a motion from the government, to reduce that defendant's sentence. Fed. R. Crim. P. 35(b).

180 months' imprisonment, an "upward variance based upon the extensive nature of the offense." The Court continued to say that "[a]fter considering the guidelines and the factors in the statute, 3553(a), I find the sentence imposed is sufficient but not greater than necessary. Frankly it's a fortunate sentence for the defendant given the transnational nature of the offense to comply with the statutory purposes of sentencing." The Court asked whether the parties had any objections; Gomez-Lubo's attorney objected to the substantive reasonableness of the sentence.

The District Court's judgment included a statement of reasons for its sentence, which identified the reasons for its upward variance in crafting Gomez-Lubo's sentence. The Court indicated that it varied upward in sentencing Gomez-Lubo because of the nature and circumstances of the offense under § 3553(a)(1). Namely, the Court stated that it varied upward due to "[t]he participation of the defendant in a transnational drug conspiracy, as well as the conservative amount of narcotics he is being held accountable for which do not accurately reflect the scope of the criminal conduct." The Court's second reason for varying upward was to reflect the serious of the offense, promote respect for the law, and to provide punishment for the offense. Finally, the District Court wrote: "After considering the advisory recommendations of the United States Sentencing Guidelines and all the factors identified in 18 U.S.C. § 3553(a)(1)–(7), the Court finds the sentence imposed to be sufficient, but not greater than necessary, to comply with the purposes of sentencing as set forth in 18 U.S.C. § 3553(a)."

Gomez-Lubo timely appealed. On appeal, he argues that his sentence was substantively unreasonable because the Distritct Court (1) failed to consider relevant factors that were due significant weight; (2) gave weight to improper facts; and (3) committed a clear error of judgment in considering the totality of the circumstances by failing to adequately explain its decision to impose an upward variance.

## II.

We review the sentence a district court imposes for "reasonableness," which "merely asks whether the trial court abused its discretion." *United States v. Pugh*, 515 F.3d 1179, 1189 (11th Cir. 2008) (quoting *Rita v. United States*, 551 U.S. 338, 351, 127 S. Ct. 2456, 2465 (2007)).

In reviewing a sentence for reasonableness, we perform two steps. *Id.* at 1190. First, we must "'ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range.'" *Id.* (quoting *Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007)).[4]

---

[4] The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for the

If we conclude, as we do here, that the district court did not procedurally err, we then consider the "substantive reasonableness of the sentence imposed under an abuse-of-discretion standard," based on the "totality of the circumstances." *Pugh*, 515 F.3d at 1190 (internal quotation marks omitted). We "will not second guess the weight (or lack thereof) that the [court] accorded to a given [§ 3553(a)] factor . . . as long as the sentence ultimately imposed is reasonable in light of all the circumstances presented." *United States v. Snipes*, 611 F.3d 855, 872 (11th Cir. 2010) (quotation marks, alteration, and emphasis omitted). The court need not give all factors equal weight and has discretion to attach great weight to one factor over another. *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015).

However, a court may abuse its discretion if it (1) fails to consider relevant factors that are due significant weight, (2) gives an improper or irrelevant factor significant weight, or (3) commits a clear error of judgment by balancing a proper factor unreasonably. *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc). Also, a court's unjustified reliance on any one § 3553(a) factor may be a symptom of an unreasonable sentence. *United States v. Crisp*, 454 F.3d 1285, 1292 (11th Cir. 2006). We will vacate a

---

sentence imposed to afford adequate deterrence; (4) the need to protect the public; (5) the need to provide the defendant with educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) the pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

sentence as substantively unreasonable only if we are "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Irey*, 612 F.3d at 1190 (quotation marks omitted).

A district court is not required to state that it has considered each of the § 3553(a) factors or to discuss each of them. *United States v. Kulhman*, 711 F.3d 1321, 1326 (11th Cir. 2013). Instead, an acknowledgment by the district court that it considered the § 3553(a) factors is sufficient. *United States v. Turner*, 474 F.3d 1265, 1281 (11th Cir. 2007). Likewise, a district court's failure to discuss mitigating evidence does not indicate that the court "erroneously 'ignored' or failed to consider this evidence." *United States v. Amedeo*, 487 F.3d 823, 833 (11th Cir. 2007). "A sentencing court's findings of fact may be based on undisputed statements in the [presentence investigation report]." *United States v. Bennett*, 472 F.3d 825, 832 (11th Cir. 2006).

A district court imposing an upward variance must provide a justification compelling enough to support the degree of the variance and complete enough to allow for meaningful appellate review. *United States v. Early*, 686 F.3d 1219, 1221 (11th Cir. 2012). That a sentence is well below the statutory maximum is an indicator of reasonableness. *Id.* at 1222. We have reviewed a challenge to whether the district court's explanation is sufficient to justify the

degree of variance under the substantive-reasonableness umbrella. *See id.* at 1221-23.

In *Early*, we affirmed the district court's 210-month sentence where the guideline range was 78–97 months' imprisonment and the government had recommended a sentence at the low end of the range. *Id.* There, the district court explained that it was imposing the variance, in part, because the guideline range did not adequately account for the number of bank robberies Early had committed. *Id.* at 1222. We rejected Early's argument that the district court abused its discretion by justifying the variance in this way, explaining that this amounted to an argument that the district court gave too little weight to the guideline range as a relevant § 3553(a) factor and that it was not our role to substitute our judgment for that of the district court in weighing the relevant factors absent a clear error of judgment. *Id.* at 1223. We also considered that, although the upward variance was substantial, the sentence was still well below the statutory maximum of 900 months' imprisonment. *Id.* at 1222.

A criminal defendant who wants to "preserve a claim of error" for appellate review must inform the district court "of [(1)] the action the party wishes the court to take, or [(2)] the party's objection to the court's action and the grounds for that objection." Fed. R. Crim. P. 51(b). A defendant's argument for a specific sentence adequately informs the district court of the action he wishes the court to take as well as the grounds for his objection and accordingly preserves for appeal a claim that his sentence is unreasonably

long. *Holguin-Hernandez v. United States*, 140 S. Ct. 762, 764, 766 (2020). "[W]aiver is the intentional relinquishment or abandonment of a known right." *United States v. Campbell*, 26 F.4th 860, 872 (11th Cir.) (quotation marks omitted), *cert. denied*, 143 S. Ct. 95 (2022).

Here, Gomez-Lubo's 180-month sentence was not substantively unreasonable. First, the District Court did not abuse its discretion by failing to consider relevant factors because it heard Gomez-Lubo's mitigating arguments, was not required to explicitly discuss them, and acknowledged that it had considered the guidelines and the § 3553(a) factors and that the parties had "made statements on their behalf." That was enough, under the totality of the circumstances, to show that the Court considered the relevant factors. *See Kulhman*, 711 F.3d at 1326; *Amedeo*, 487 F.3d at 833.

Second, the District Court did not abuse its discretion by considering an impermissible fact, that is, that Gomez-Lubo was responsible for distributing significantly more cocaine than was reflected in the guideline range. This fact correlates to several § 3553(a) factors that the court was required to consider, and the court had discretion to attach more weight to those factors than to the guideline range. *See Rosales-Bruno*, 780 F.3d at 1254. Here, the District Court attached more weight to the nature and circumstances of the offense and the need for the punishment to fit the crime than to the guideline range. That decision is not one this Court should second guess, as the sentence imposed was

reasonable in light of the circumstances presented.  *See Snipes*, 611 F.3d at 872.

Further, the fact that Gomez-Lubo was responsible for more cocaine than what was attributed to him in the guidelines range was supported by the record.  The PSR clearly showed that Gomez-Lubo engaged in a vast cocaine distribution conspiracy over a number of years, transporting cocaine from Colombia through Central America and into the United States.  And because he did not object to anything in the PSR, the District Court was allowed to rely on those undisputed statements.  *See Bennett*, 472 F.3d at 832.  Gomez-Lubo's guideline range, however, was based solely on the 15-kilogram shipment of cocaine seized in Panama. The District Court did not commit clear error in determining that, based on Gomez-Lubo's conduct, the guideline range of 121 to 151 months did not accurately reflect the scope of the criminal conspiracy.

Finally, the district court's explanation of the 180-month sentence was sufficiently compelling to justify the 29-month upward variance because the court explained that it was varying upward due to the guideline range understating the amount of cocaine involved, and the 180-month sentence was still significantly below the statutory maximum of life imprisonment.

**AFFIRMED.**