WILSON, Circuit Judge,
dissenting:
For illegally reentering the United States, a crime with no statutory minimum and a base Guidelines range of 0-6 months, Rosales-Bruno was sentenced to more than 7 years in prison. In imposing this sentence, the district court more than tripled the upper end of the applicable Guidelines range. The justifications supporting this major variance are insufficient, and this sentence — the product of a clear error in judgment — is “greater than necessary[] to comply with the purposes set forth” in 18 U.S.C. § 3553. See United States v. Irey, 612 F.3d 1160, 1187, 1189 (11th Cir.2010) (en banc). Therefore, I dissent.
I.
For three primary reasons, I conclude that the district court abused its discretion in imposing an 87-month sentence on remand, after we previously vacated Rosales-Bruno’s initial 87-month sentence. See id. at 1188-89; United States v. Rosales-Bruno, 676 F.3d 1017, 1024 (11th Cir.2012). First, despite a massive, 60-month, 68-percent decrease in the upper end of the advisory range resulting from this court’s opinion vacating Rosales-Bruno’s initial sentence, the sentence imposed at Rosales-Bruno’s resentencing did not decrease by a single day. Under the circumstances, it is clear that the district court failed to consider the Guidelines as required under 18 U.S.C. § 3553(a)(4). Second, the sentence imposed — more than three times the upper end of the Guidelines range — is the product of a substantial upward variance in an entirely unremarkable case. Sentencing so harshly in ordinary cases will inevitably create wide sentencing disparities, contrary to congressional intent. See 18 U.S.C. § 3553(a)(6). Third, Rosales-Bruno was convicted of illegally reentering the United States, where his daughter lives and where he previously found gainful employment. In concluding that this crime warranted a sentence of more than 7 years’ imprisonment, the district court failed to appropriately consider the nature and circumstances of the crime for which Rosales-Bruno was being sentenced as required under 18 U.S.C. § 3553(a)(1).
“In ... cases such as Irey ..., we vacated sentences on the ground that they failed in effect to give ‘real weight’ to the Guidelines or to adequately reflect the Guidelines’ policy statements and underlying concerns.” United States v. Early, 686 F.3d 1219, 1224 (11th Cir.2012) (Martin, J., concurring in the judgment). The same is true here. Adherence to Irey (vacating a *1279 sentence that was too low) thus requires vacatur (of a sentence that is too high, like this one).[1]
A.
Sentencing is highly subjective, and without standardization, sentencing based on the § 3553(a) factors is unpredictable and disparate. That is why the Guidelines were created. See Irey, 612 F.3d at 1181. And, while the Guidelines are no longer mandatory, see United States v. Booker, 543 U.S. 220, 226, 125 S.Ct. 738, 746, 160 L.Ed.2d 621 (2005), they remain incredibly useful. As the Supreme Court put it, “[t]he district courts ... must consult th[e] Guidelines and take them into account when sentencing.” Id. at 264, 125 S.Ct. at 767. Or, as we put it in Irey, “though not bound by the [Guidelines, a sentencing court may not give them so little consideration that it amounts to not giving any real weight to the Guidelines range in imposing the sentence.” 612 F.3d at 1217 (internal quotation marks, omitted). That is exactly what occurred here. Indeed, we will rarely be confronted with circumstances that se» clearly prove the district court’s failure to give the Guidelines “real weight.”
Initially, the district court calculated a 70-87 month Guidelines range and, concluding that an upward variance was not warranted, the district court sentenced Rosales-Bruno at the top of that range. We vacated that sentence because the district court mistakenly believed that Rosales-Bruno had been convicted of a violent felony and applied a 16-level enhancement as a result of that error. Rosales-Bruno, 676 F.3d at 1024.
At resentencing, without the erroneous violent-felony enhancement, the Guidelines range decreased from 70-87 to 21-27 months, meaning that instead of facing a sentence of 7.25 years, Rosales-Bruno faced a sentence under the correctly calculated Guidelines of, at most, 2.25 years. However, despite this substantial decrease in the applicable Guidelines range, Rosales-Bruno received the exact same 87-month sentence as before. To re-impose the sentence we initially vacated, the court had to radically depart from its initial determination that Rosales-Bruno did not deserve an upward variance, this time con- *1280 eluding that he in fact deserved a variance — and a major one, at that, as the 87-month sentence imposed required a 60-month upward variance, more than tripling the upper , end of the Guidelines range.
It is difficult to ignore the uncanny resemblance between the district court’s initial sentence and the sentence imposed on remand, and I have little doubt that if the Guidelines had been correctly calculated the first time around, Rosales-Bruno would have been sentenced to 27 months. Nothing in the record at Rosales-Bruno’s initial sentencing heáring suggests that the court viewed Rosales-Bruno as the type of defendant who warranted an upward variance at all, let alone such a significant one. And between Rosales-Bruno’s initial sentencing and his resentencing, the only changes that occurred cut in favor of a lower sentence. Under the Guidelines, Rosales-Bruno was no longer deemed a violent felon, and his advisory range decreased by 60 months, or roughly 68 percent. Despite these changes, Rosales-Bruno’s sentence did not decrease by a single day.
The conclusion to be drawn from a sentence that does not change based on such a substantial decrease in the Guidelines range is that the Guidelines were given no weight at all, requiring vacatur under Irey. See 612 F.3d at 1217. ■ Ordinarily, it is difficult to tell just how much (or, in this case* how little) weight is given to any particular sentencing factor because the Guidelines are but one of many factors that the court must take into account. Here, however, one of the variables — the Guidelines range — is perfectly isolated, as nothing else changed between Rosales-Bruno’s first sentencing and his second. The fact that such a dramatic decrease in the Guidelines had no impact on the sentence imposed shows clearly that the Guidelines were given no weight at all, which, aside from requiring vacatur under Irey, is entirely incompatible with Congress’s command to consider the Guidelines when imposing a sentence. See 18 U.S.C. § 3553(a)(4).
Of course, the Majority opinion suggests that, from the very beginning, the sentencing judge thought that 87 months was the correct sentence for Rosales-Bruno; the district court came up with an 87-month sentence all on its own, based on experience, common sense, and good judgment. But this sentence, 87 months’ imprisonment, did not come from the district court’s judgment or experience. It came from the Sentencing Guidelines — or, more accurately, from a miscalculation of the Guidelines. The Majority opinion rewrites history in suggesting that, regardless of the. Guidelines, the district court was always going to impose an 87-month sentence, even if it had calculated the Guidelines correctly the first time around.
Indeed, the Majority opinion even asserts that the best evidence of what the district court would have done the first time around is what the court did the second time around on remand. Not so. The best evidence of what the court would have done the first time around is what the court did the first time, around, which was to sentence Rosales-Bruno to the upper end of the Guidelines range. Again, the number 87 was not a product of the sentencing court’s judgment; it was a product of the Guidelines. There is no persuasive explanation in the record as to why a criminal defendant, whom the district court in fact decided to sentence within the Guidelines in the first instance, suddenly became a defendant requiring a triple-upward variance on remand.
Further, concluding that a massive decrease in the Guidelines range should have at least some influence on the sentence imposed is not the same as suggesting that the Guidelines range should be mandatory *1281 in violation of Booker. I suggest only what our binding precedent in Irey has already held: that Congress’s command to respectfully consider the Guidelines includes giving “real weight” to the Guidelines, and that by imposing the exact same sentence despite a 68-percent decrease in the Guidelines, the district court clearly did not give the Guidelines the “real weight” they deserve. See Irey, 612 F.3d at 1217-18.
This limited proposition stops far short of treating the Guidelines as mandatory. There is an obvious difference between finding an abuse of discretion here — where a district court that already found a within-Guidelines sentence to be appropriate subsequently disregarded a massive decrease in the advisory range — and making the Guidelines mandatory.[2] If the evidence before us is not enough to establish that the district court failed to adequately weigh the Guidelines, then no evidence ever would be, in which case Irey would have to be rewritten, and 18 U.S.C. § 3553(a)(4) might as well not exist.
B.
The district court’s decision to sentence Rosales-Bruno to more than three times the upper end of the advisory range even though he falls in the “heartland to which the Commission intend[ed] [the 21-27 month] Guidelines [range] to apply” is further evidence that the court abused its discretion. See Kimbrough v. United States, 552 U.S. 85, 109, 128 S.Ct. 558, 574-75, 169 L.Ed.2d 481 (2007) (internal quotation marks omitted). We have held that “ ‘closer review may be in order when the sentencing judge varies from the Guidelines based solely on the judge’s view that the Guidelines range fails properly to reflect § 3553(a) considerations even in a mine-run case.’” Irey, 612 F.3d at 1188 (quoting Kimbrough, 552 U.S. at 109, 128 S.Ct. at 575). This is just such a case, as the primary basis for the variance was Rosales-Bruno’s criminal history, which was already reflected in the applicable Guidelines range. See, e.g., United States v. Lopez, 343 Fed.Appx. 484, 486 (11th Cir.2009) (per curiam) (vacating an above-Guidelines sentence because the district court abused its discretion “[b]y focusing only on [the defendant’s] criminal history, without providing any other justification as to the need to deviate almost fifty percent above the high end of the guideline range” (footnotes omitted)). As in Lopez, the only basis in the record for the district court’s substantial upward variance is a rote recitation of the criminal history portion of Rosales-Bruno’s presentence report. This information was already factored into the Guidelines calculation.
Rosales-Bruno’s base offense level was 8. U.S.S.G. § 2L1.2(a). He then received a 2-level reduction for acceptance of responsibility. Id. § 3El.l(a). A base offense level of 6 translates to a Guidelines range of 0-6 months in prison. But that was not the offense level or Guidelines range applicable to Rosales-Bruno. He had felony convictions to his name, so his offense level increased to 10, id. § 2L1.2(b)(l)(D), increasing the applicable Guidelines range from 0-6 to 6-12 months. In addition to being a felon, Rosales-Bruno was convicted of violating a variety of traffic laws and driving while intoxicated on several occasions. These prior convictions placed Rosales-Bruno in criminal history category V.
*1282 And the Guidelines account for all of this, as Rosales-Bruno’s recidivism is the precise characteristic that landed him in category V. That categorization increased the applicable Guidelines range again, this time from 6-12 months to 21-27 months. Thus, when creating the 21-27 month advisory range applicable in this case, the Commission knew it was dealing with illegal reentrants just like Rosales-Bruno, who have a prior felony conviction and at least 10 criminal history points.
Accordingly, this Guidelines range already reflects the fact that Rosales-Bruno is a repeat criminal who has done reprehensible things. After all, it is hard to imagine a category V defendant who is not a repeat criminal or a felon who has not done reprehensible things. The Commission designed the Guidelines to punish such defendants more harshly than others, by increasing offense levels from 6 to 10 and by increasing criminal history categories from I to V. In short, as a result of repeatedly breaking the law and doing reprehensible things (at least once), illegal reentrants like Rosales-Bruno face a Guidelines range of 21-27 months, rather than 0-6 months.
Nothing in the record suggests that Rosales-Bruno is any worse than other con-vieted-felon, category V illegal reentrants, let alone so much worse that the high end of his advisory sentencing range should be tripled. We have previously vacated an above-Guidelines sentence for similar reasons. See United States v. Valdes, 500 F.3d 1291, 1292 & n. 2 (11th Cir.2007) (per curiam) (vacating in part because “[m]any of the bases for the district court’s sentence were already accounted for in calculating the Guidelines range” (emphasis added)).[3] Why, then, did the district court sentence Rosales-Bruno to more than triple the upper end of an advisory range that was specifically designed for eonvict-ed-felon illegal reentrants with similar patterns of recidivism?
The Majority opinion attempts to answer this question by noting that Rosales-Bruno is “an outstanding candidate for an upward variance from the advisory guidelines range” primarily because he is a category V criminal, placing him among the worst 13.1 percent of illegal reentrants. Maj. Op. at 1263-66. But it makes no sense to suggest that a person is “an outstanding candidate” for being treated three times harsher than other category V criminals because he is a category V criminal. Being a category V criminal does no more than make Rosales-Bruno. an outstanding candidate to be treated as a category V criminal, which, in this case, means being sentenced to somewhere between 21 and 27 months’ imprisonment. See Valdes, 500 F.3d at 1292 n. 2; Valdes, 298 Fed. Appx. at 930 (indicating that a district court abuses its discretion by imposing an upward variance based solely on prior convictions that are already incorporated into a defendant’s criminal history category).
Quite simply, nothing in the record suggests that Rosales-Bruno falls outside the “heartland” of convicted-felon, category V illegal reentrants. See, Kimbrough, 552 U.S. at 109, 128 S.Ct. at 574-75. The Majority’s response — that Rosales-Bruno falls outside the “heartland” of illegal reen-trants because he is a category V recidivist — misses the point entirely. When the *1283 Supreme Court referenced the “heartland” in Kimbrough, and when we referenced the “mine-run case” in Irey, 612 F.3d at 1188, the point was not to compare the defendant being sentenced to all other defendants who committed the same underlying offense. The point was, and is, that we must compare the defendant being sentenced to other defendants “to which the Commission intendfed] individual Guidelines to apply.” Kimbrough, 552 U.S. at 109,128 S.Ct. at 574-75.
After all, the purpose of considering the “heartland” or the “mine-run” case is “to avoid excessive sentencing disparities,” id. at 107, 128 S.Ct. at 574 (internal quotation marks omitted), “among defendants with similar records who have been found guilty of similar conduct,” 18 U.S.C. § 3553(a)(6) (emphasis added). That purpose is not served by comparing Rosales-Bruno to other generic illegal reentrants,' most of whom fall in lower criminal history categories and thus face lower Guidelines ranges. Congress clearly wants sentencing disparities between category I illegal reentrants with no prior felonies, on the one hand, and convicted-felon, category V illegal reentrants, on the other, because these two types of illegal reentrants do not have “similar records,” and thus, a sentencing disparity between the two is entirely warranted. See id.
So, again, the fact that Rosales-Bruno has a worse criminal record than most other illegal reentrants does not place him outside the relevant “heartland.” Of course he has a worse criminal record. That is why the Guidelines place him in criminal history category V and increase his advisory range accordingly. But in considering whether Rosales-Bruno falls outside the “heartland” for purposes of justifying an upward variance from the sentencing range applicable to category V illegal reentrants, we must compare Rosales-Bruno to defendants who have similar records and thus are treated similarly under the Guidelines.
Properly understood, then, the question of whether Rosales-Bruno falls “outside the heartland to which the Commission intend[ed] individual Guidelines to apply,” Kimbrough, 552 U.S. at 109, 128 S.Ct. at 575 (internal quotation marks omitted), can only be answered by comparing Rosales-Bruno to the average category V illegal reentrant with a felony conviction.[4] In other words, it is only by comparing Rosales-Bruno to people “with similar records who have been found guilty of similar conduct” that we can avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a)(6) (emphasis added). And the record here does not show that “there was something unusual, either about [Rosales-Bruno] or the circumstances surrounding [his illegal reentry], that warranted a different sentence” than the one advised by *1284 the Guidelines for other convicted-felon, category V illegal reentrants. See Irey, 612 F.3d at 1182.
Indeed, while I do not mean in any way to condone Rosales-Bruno’s lengthy criminal history, I suspect that the criminal history of most convicted-felon, category V criminals is as bad or worse. The district court insisted, as does the Majority opinion, that Rosales-Bruno lacked proper respect for the law, needed to be deterred, and presented a risk of harm to the public. See 18 U.S.C. § 3553(a)(2)(A)-(C). All of that is true, but all of that is equally true of other convicted-felon, category V illegal reentrants. These concerns explain why the Commission increased Rosales-Bruno’s advisory range from 0-6 months to 21-27 months, just as it did for all other convicted-felon, category V illegal reen-trants. But these concerns do nothing to explain why the district court then more than tripled the upper end of that range— a range the Commission designed for people just like Rosales-Bruno.
In short, Rosales-Bruno is a “mine-run” convicted-felon, category V illegal reen-trant, and it is clear that “the sentencing judge varie[d] from the Guidelines based solely on the judge’s view that the Guidelines range fail[ed] properly to reflect § 3553(a) considerations.” Irey, 612 F.3d at 1188 (quoting Kimbrough, 552 U.S. at 109, 128 S.Ct. at 575). Allowing district courts to triple the upper end of the Guidelines range in ordinary cases will lead inevitably to unwarranted sentencing disparities in direct contravention of Congress’s purpose in passing 18 U.S.C. § 3553(a)(6). In “cases such as Irey and Pugh, we vacated sentences on the ground that they failed ... to adequately reflect the Guidelines’ policy statements and underlying concerns.” Early, 686 F.3d at 1224 (Martin, J., concurring in the judgment) (citing United States v. Pugh, 515 F.3d 1179, 1199-1201 (11th Cir.2008)). Adherence to this authority requires vacatur here. And concluding that the district court abused its discretion by acting in a way that would lead to wide sentencing disparities in ordinary cases is not at all inconsistent with Booker’s prohibition on treating the Guidelines as mandatory. After all, Booker did not prohibit us from vacating Pugh’s sentence based on the district court’s failure to “adequately reflect ... the sentencing range established by the Guidelines.” Pugh, 515 F.3d at 1200 (internal quotation marks omitted). District courts clearly enjoy a wide range of sentencing discretion after our decisions in Irey and Pugh, and' they would continue to do so were we to .follow the precedent set by those cases, which requires us to vacate Rosales-Bruno’s sentence.
C.
Rosales-Bruno’s sentence appears all the more unreasonable in light of the “degree of variance ... and ... the extent of [the] deviation! ] from the Guidelines,” which we are free to consider. Gall, 552 U.S. at 47, 128 S.Ct. at 595 (emphasis added). The 60-month upward variance Rosales-Bruno received, resulting in a sentence more than three times the upper end of the Guidelines range, “[w]hether considered in absolute or percentage terms, ... is a ‘major’ variance in the legal parlance of sentencing law.” Irey, 612 F.3d at 1196. Instead of spending roughly two years in prison, as will most convicted illegal reentrants with similar criminal records, Rosales-Bruno will spend the better part of a decade behind bars.
The Supreme Court has made clear that, when variances are imposed, the district court’s justification must be “sufficiently compelling to support the degree of the variance,” with “a major departure” requiring “a more significant justification than a minor one.” Gall, 552 U.S. at 50, 128 S.Ct. at 597. While the Supreme Court has precluded formulaic proportion *1285 ality requirements or a rule that permits variances only under extraordinary circumstances, it remains our duty to “see that the justification [for a variance] is sufficiently compelling” to “support the degree of the variance.” Ivey, 612 F.3d at 1187 (internal quotation marks omitted).[5] But the “justifications” supporting the variance imposed here amount to no more than a recitation of characteristics that are common to most convicted-felon, category V illegal reentrants. These justifications are “[in]sufficiently compelling to support the degree of the variance.” Id. (internal quotation marks omitted). Indeed, if these justifications were sufficient, then virtually any category V defendant — who by definition would have a long criminal record that is sure to contain sordid details casting the defendant in a highly unflattering light— could be sentenced to three times the upper end of the advisory range, undermining the Guidelines’ primary purpose of preventing unwarranted sentencing disparities.
In reaching this conclusion, I am not seeking to require an unprecedented degree of explicit comparison between offenders before a district court may sentence a defendant. All I would require is that the sentencing judge give a credible justification for a major variance from the Guidelines beyond factors that are typical of defendants subject to the same advisory range. This is precisely what is required by the Supreme Court and by Chief Judge Carnes’s opinion for this court in Ivey, where we said Irey’s sentence was too low. See 612 F.3d at 1196 (“[T]he requirement is that the justification be ‘sufficiently compelling to support the degree of the variance.’ ” (quoting Gall, 552 U.S. at 50, 128 5.Ct. at 597)). The degree of a variance is a factor that is independently significant and that here weighs heavily in favor of reversal; the Supreme Court has reiterated that our review for substantive reasonableness requires us to “take into account the totality of the circumstances, including the extent of any variance from the Guidelines range,” Gall, 552 U.S. at 51, 128 S.Ct. at 597, as “the extent of the difference between a particular sentence and the recommended Guidelines range is surely relevant,” id. at 41, 128 S.Ct. at 591. Because the district court imposed a major variance in a “mine-run” case, in the absence of sufficiently compelling justifications for any variance, let alone such a major one, I would vacate Rosales-Bruno’s unreasonably harsh sentence. See Ivey, 612 F.3d at 1186-87.
D.
Section 3553(a)(2)(A) requires that a sentence “reflect the seriousness of the offense ... and provide just punishment for the offense.” 18 U.S.C. § 3553(a)(2)(A) (emphasis added). The district court’s consideration of this factor was clearly unreasonable. It is critical here to recall that Rosales-Bruno is not being sentenced for abusing his girlfriend or for driving drunk. He has already been punished for those crimes, and his punishment under the Guidelines for the instant crime has already been increased substantially as a result of those past offenses.
He is being sentenced for illegal reentry under 8 U.S.C. § 1326,[6] which is a relative *1286 ly low-level offense.[7] Further, it is undisputed that Rosales-Bruno’s commission of the offense was routine and unremarkable. For category I offenders, the crime carries the lowest range the Guidelines have to offer: 0-6 months. It is thus striking that the district court mentioned the nature and circumstances of the instant offense as a factor making an 87-month sentence appropriate. In contrast, the Commission believes that the essential nature and circumstances of the illegal-reentry offense, by themselves, make at most a 6-month sentence appropriate,[8] suggesting that an 87-month sentence is wildly inappropriate. The district court offered no basis for disagreeing with this assessment. This factor clearly cuts — and cuts hard — against the reasonableness of the district court’s decision.
Indeed, consideration of the circumstances surrounding Rosales-Bruno’s illegal reentry into the United States makes a 60-month upward variance seem outrageous. Rosales-Bruno has a daughter in the United States, and he apparently reentered the United States to resume gainful employment in the citrus processing industry. Of course, it is illegal for Rosales-Bruno to be in the same country as his child and to continue working here as he had before he was deported, but spending more than 2 years in prison for this crime certainly seems like punishment enough. And spending more than 7 years in prison for this offense is plainly too much. See 18 U.S.C. § 3553(a)(2)(A).
* * %
On balance, the § 3553(a) factors clearly do not support an above Guidelines sentence in this case, and varying so significantly above the Guidelines based on facts about Rosales-Bruno’s history that are common to most people in the applicable Guidelines range was clearly even more unreasonable. See, e.g., Gall, 552 U.S. at 51, 128 S.Ct. at 597 (requiring reviewing courts to consider “the totality of the circumstances, including the extent of any variance from the Guidelines range”). Rosales-Bruno is far from an outlier among convicted-felon, category V illegal reen-trants. If anything, by virtue of his gainful employment and decreasing pattern of criminality, he appears to be among the less dangerous, less depraved, and more productive portion of his criminal history category.[9] Yet he was sentenced as if he were much, much, much worse. If a dis *1287 trict court does not abuse its discretion by tripling the upper end of a Guidelines range in a “mine-run” case where the Guidelines already incorporate and account for the defendant’s worst characteristics, it is difficult to imagine any circumstances under which we would find an abuse of discretion because a sentence is too harsh. Unlike the Majority, I am left with the definite and firm conviction that the district court committed a clear error of judgment, and I would vacate Rosales-Bruno’s sentence and remand for resentencing within the Guidelines.
II.
We have never vacated a sentence because it was too high, imposing a sentencing ceiling on remand. By contrast, on numerous occasions, we have vacated sentences because they were too low and imposed a sentencing floor. See, e.g., Irey, 612 F.3d at 1224-25 & n. 46 (concluding that no sentence less than 30 years would suffice); Pugh, 515 F.3d at 1204 (holding that a sentence of probation without imprisonment or supervised release was— and would be — unreasonable); see also United States v. Livesay, 587 F.3d 1274, 1279 (11th Cir.2009) (“Not only do we hold that the particular sentence imposed below is unreasonable, but we also hold that any sentence of probation would be unreasonable ....”); United States v. McVay, 294 Fed.Appx. 488, 490 (11th Cir.2008) (per curiam) (prohibiting the district court from imposing a sentence without prison time). This forces me to believe that we are grading harshness and lenience on different scales. By failing to adhere to Irey and Pugh in this upward variance case, the Majority opinion reinforces this unstated double standard. It is true that we say all sentences are meaningfully reviewed for reasonableness, but in practice, it seems that only lenient sentences are subject to vacatur on purely substantive grounds. The message that we are sending to the district courts by this precedent is that they enjoy virtually unfettered sentencing discretion, so long as they sentence harshly. In other words, while we say otherwise, we are in reality reading a “severity principle” into sentencing that should not be there. See Irey, 612 F.3d at 1196-97 (explaining that § 3553(a) supports neither a “parsimony principle” nor a “severity principle”).
A.
Our case law has been so one-sided that we have convinced at least one member of this court, Judge Martin, that we do not actually place an upper limit on sentencing discretion, despite our pretensions to the contrary. That is, she believes that we have been so obvious in applying our unwritten “severity principle” that it is now the law of our circuit.[10] In Early, Judge Martin stated that our precedent “teaches deference to ... any variance above the Guideline range, no matter how large,” so long as it is under the statutory maximum, of course.[11] 686 F.3d at 1223 (Martin, J., *1288 concurring in the judgment). The Majority teaches the same lesson.
Judge Martin then articulated the two different standards of review that she sees being applied depending on whether a sentence is harsh or lenient:
My reading of these cases tells me that in considering sentences above the Guideline range, we look only to whether the sentencing court seemed to consider the § 3558(a) factors and we ignore whether the court might have disregarded one of the factors or weighed the factors in an unreasonable way. In contrast, for downward variances, we show no such deference and instead scrutinize how a sentencing court applied each and every § 3553(a) factor. We even go so far as to decide for ourselves whether the factors were weighed correctly.
... In downward variance cases such as Irey ..., we vacated sentences on the ground that they failed in effect to give real weight to the Guidelines or to adequately reflect the Guidelines’ policy statements and underlying concerns....
... In sum, even though our case law purportedly requires a significant justification to support a major departure from the Guidelines, the panel’s review of Mr. Early’s 116 percent upward variance evinces little indication that such a requirement even applies here.
Id. at 1223-25 (citations and internal quotation marks omitted). Unmistakably, that requirement does apply here.[12] I agree with Judge Martin’s summary of our standard of review as applied to lenient sentences but disagree with her to the extent that she suggests any other standard applies to harsh sentences. Thus, I believe that in upward variance cases such as this, just as in downward variance cases such as Irey, “we vacate[ ] sentences [when] they fail[] in effect to give ‘real weight’ to the' Guidelines or to adequately reflect the Guidelines’ policy statements and underlying concerns.” Id. at 1224. As discussed above, the district court here failed to give “real weight” to the Guidelines and imposed'a sentence that does not reflect the Guidelines’ purpose of eliminating sentencing disparities between similarly-situated defendants. Because the principles that led us to vacate Irey’s sentence compel vacatur of Rosales-Bruno’s sentence, and because those principles apply in upward variances cases just as much as they do in downward variance cases, I cannot find that the sentence imposed here was reasonable.
B.
The Majority opinion disputes that we have adopted a severity principle in our review of sentencing decisions, citing three cases which, in the Majority’s view, prove that we have vacated overly-harsh sentences as substantively unreasonable. These cases indicate, however, that the sentences were not actuálly vacated because they were too long.
*1289 In the only published case, Valdes (a three paragraph, per curiam opinion), the defendant was sentenced to 108 months’ imprisonment, far above the upper end of the advisory range. 500 F.3d at 1292. On appeal, we held that “the reasons discussed were inadequate to support an extraordinary variance.” Id. This opinion does not, however, prove that we have indeed vacated a sentence because it was too long. Instead of holding, as we did in Irey, that “no sentence less than [the advisory sentence] is sufficient,” 612 F.3d at 1225, in Valdes, we held that “the reasons discussed were inadequate,” 500 F.3d at 1292. As we recognized in Irey, “the adequacy of a district court’s ... sentence explanation is a classic procedural issue, not a substantive one.” Irey, 612 F.3d at 1194 (emphasis added). Thus, Valdes based vacatur at least in part on procedural, not substantive grounds.[13]
The distinction is critical because Valdes, unlike Irey, left open the possibility that the district court could impose the same sentence on remand if a more thorough explanation were offered. Again, in Irey, it did not matter what reasons the district court gave for its downward variance or whether it gave those reasons (as indeed it did); no sentence explanation could render any downward variance substantively reasonable in that case, and we instructed the district court to sentence Irey within the advisory range. See Irey, 612 F.3d at 1224-25 & n. 46 (requiring the district court to impose a sentence of 30 years on remand).
Nor does our unpublished opinion in Lopez, 343 Fed.Appx. 484, signal the same warning against harsh sentencing as cases such as Irey signaled against lenient sentencing. In vacating Lopez’s sentence, we explained that “the judge’s ability to [deviate above the guideline range despite the conviction’s role in helping to dictate that range] does not then give free rein to impose any sentence above without first adequately justifying that decision.” Id. at 486 n. 1 (emphasis added). As with Valdes, then, our decision in Lopez, which rested ■ on “the adequacy of a district court’s ... explanation,” was, at least in significant part, “a classic procedural [decision], not a substantive one.” Irey, 612 F.3d at 1194; see also Gall, 552 U.S. at 51, 128 S.Ct. at 597 (“failing to adequately explain the chosen sentence — including an explanation for any deviation from the Guidelines range” is procedural error).
Further, regardless of whether the Majority opinion is correct that Lopez represents vacatur on substantive grounds alone, that decision, which was unpublished, did very little to eliminate any unwritten severity principle in our law. And if Lopez applied the standard in this circuit for vacating harsh sentences, then it strongly supports reversal here. After all, *1290 in Lopez, we held that the district court abused its discretion “[b]y focusing only on Lopez’s criminal history, without providing any other justification as to the need to” vary above the Guidelines. 343 FedAppx. at 486. That is precisely what happened in this case. Accordingly, if Lopez means what the Majority opinion claims, then Rosales-Bruno’s sentence is also substantively unreasonable.
Thus, Valdes and Lopez only strengthen my contention that Rosales-Bruno’s sentence should be vacated. In those cases, as here, the district court varied above the Guidelines based on factors that were already incorporated into the Guidelines without providing any other justification for varying upward so substantially. See Valdes, 298 Fed.Appx. at 930 (reaffirming our initial holding in Valdes that the defendant’s “criminal history alone would not justify an upward departure as such behavior is accounted for through his criminal history category”); Lopez, 343 Fed. Appx. at 486 (vacating the defendant’s sentence because the court “focus[ed] only on [the defendant’s] criminal history”). If Valdes and Lopez are distinguishable from this case, it is only because the variance here is more severe, and thus less justifiable and less reasonable, than the variances in those cases.
There is another reason that Valdes and the third case the Majority opinion cites, our unpublished opinion in United States v. Gardner, 255 Fed.Appx. 475 (11th Cir.2007) (per curiam), do not alleviate my concern that we are developing a severity principle in sentencing. In Valdes, we vacated the sentence because “the reasons discussed were inadequate to support an extraordinary variance.” 500 F.3d at 1292 (emphasis added). Similarly, in Gardner, we vacated the above-Guidelines sentence because “[t]he extraordinary upward variance ... was not supported by extraordinary circumstances.” See 255 Fed.Appx. at 476-77.
The rule underlying those decisions is no longer good law. Valdes and Gardner cited McVay, 447 F.3d 1348, for the proposition that “a district court’s imposition of a sentence that falls far outside the Guidelines range must be supported by extraordinary circumstances.” Valdes, 500 F.3d at 1292 n. 2 (emphasis added); see Gardner, 255 Fed-Appx. at 476 (citing McVay for the same proposition). But McVay’s “extraordinary circumstances” requirement, upon which our holdings in both Valdes and Gardner were based, was explicitly abrogated by the Supreme Court in Gall, 552 U.S. at 47, 128 S.Ct. at 595 (“We reject ... an appellate rule that requires ‘extraordinary’ circumstances to justify a sentence outside the Guidelines range.”). Thus, neither Valdes nor Gardner proves that we have vacated a sentence because it was too long. They prove only that we have vacated a sentence when the district court failed to adequately justify a variance with “extraordinary circumstances,” which district courts are no longer required to do.
Consequently, to the extent the cases cited by the Majority opinion do reverse at least in part on substantive grounds, those same grounds plainly support reversal in this case. And my point remains: we have never expressly vacated a sentence as substantively unreasonable because it was simply too long and imposed a sentencing ceiling on remand. By contrast, we have not hesitated to vacate a sentence as substantively unreasonable because it was simply too short, and in many of those cases, we imposed a sentencing floor on remand. See, e.g., Irey, 612 F.3d at 1224-25 & n. 46; Pugh, 515 F.3d at 1204; Live-say, 587 F.3d at 1279; McVay, 294 Fed.Appx. at 490; see also Maj. Op. at App. B.
*1291 C.
If we do not vacate unreasonably long sentences like the one imposed here, district courts can assume that upward variances from the Guidelines are essentially per se reasonable and will not be reversed. At the same time, Irey proves that the same is not true of downward variances. Thus, while we are bound to apply the same abuse of discretion standard when reviewing the substantive reasonableness of all sentences, we have given the impression that we are more likely to vacate a lenient sentence than a harsh one, “even where the extent of the variance from the Guideline range was far smaller and where the reasons given by the sentencing court were more substantial.” Early, 686 F.3d at 1223 (Martin, J., concurring in the judgment). That is not the law of this circuit. Irey articulated meaningful lower and upper limits on a court’s sentencing discretion, and that is why I joined Chief Judge Carnes’s majority opinion in Irey (even though then-Chief Judge Edmondson and Judges Tjoflat, Birch, Barkett, and Martin did not). But it is becoming difficult to believe that those upper limits are actually as meaningful as we said.
The statistics cited by the Majority opinion, which show that district courts vary downward more frequently than they vary upward, do nothing to suggest that district courts have failed to pick up on the implicit message we have sent.[14] Just because district courts can vary above the Guidelines with virtually no scrutiny does not mean that district courts will vary above the Guidelines with regularity. And it should come as no surprise that district courts encounter more defendants who deserve lenience (in relation to the Guidelines) than harshness. The Guidelines do a much better job of incorporating defendants’ aggravating characteristics (such as the type, nature, and number of their prior offenses) than they do of capturing the myriad mitigating characteristics about defendants that may justify lenience in a particular case. Thus, the Majority opinion’s emphasis on how district courts sentence does nothing to counter the point that this court appears to apply a severity principle when reviewing harsh sentences on appeal.
Ultimately, I agree to a certain extent with Judge Martin, Judge Barkett, and other commentators who point out that we appear to be applying different standards of review depending on whether a sentence is challenged as too long or too short. I disagree, however, that these different standards of review have become, through misapplication, the law of this circuit. Irey articulátes the only standard we use to review sentences for substantive reasonableness, and that standard applies regardless of whether a sentence imposed by the district court is challenged as too lenient or too harsh. Applying that standard here requires vacatur of Rosales-Bruno’s unreasonably harsh, far above-Guidelines sentence.
*1292 III.
The district court improperly calculated Rosales-Bruno’s sentence as 87 months — a within-Guidelines sentence based on an erroneous calculation of the Guidelines. On remand, the court imposed the same sentence — a triple-upward variance. Having examined the record, the factors, and the district court’s reasons for imposing this sentence, I am convinced that this major variance was not supported by a significantly compelling justification, nor were the Guidelines given any weight or consideration. Thus, I would vacate Rosales-Bruno’s sentence and remand for resen-tencing. Moreover, failure to do so here reinforces the perception that there is a double standard of review in the Eleventh Circuit — giving greater deference to sentences above the recommended Guidelines range than those below.
We recognized in Irey that “there is a difference between deference and abdication. If there were no difference, if we did not have a meaningful role to play, we would never have set aside any sentences as substantively unreasonable, but we have.” Irey, 612 F.3d at 1194 n. 20 (citation and internal quotation marks omitted). We have not, however, expressly set aside a sentence because it was too harsh. Refusing to vacate Rosales-Bruno’s sentence in these circumstances all but eliminates the already weakened distinction between abdication and deference when we review harsh sentences. Because I believe we meant what we said in Irey — namely, that we have a meaningful role to play in reviewing sentences for substantive reasonableness — and because the only way to affirm Rosales-Bruno’s sentence is to abdicate, I respectfully dissent.

. I do not need to reach whether the Majority opinion is correct in finding that this court's review is limited to substantive reasonableness or whether Rosales-Bruno’s sentence also warrants vacatur for procedural error. To the extent procedural error may be narrowly characterized as whether the district court stated that it considered the factors and did not err in calculating the Guidelines, I agree that no such error occurred. If, however, procedural error includes giving insufficient weight to the Guidelines or our prior decision, then those issues, however labeled, are squarely before us.
In his opening brief, Rosales-Bruno argues that none of the Guidelines factors account for the major variance imposed on remand and that "[t]he coincidence of the vacated sentence and the sentence imposed on remand” make it “quite clear that the district court intended to bypass this Court's published opinion with or without sufficient justification.” For these reasons, Rosales-Bruno avers that his sentence was “unreasonable” and “unsupported by the record.” Thus, regardless of whether the grounds for vacating Rosales-Bruno’s sentence discussed here are labeled as "procedural” or "substantive,” the issues were not waived and are therefore before us. And, of course, the irregularities just quoted from Rosales-Bruno’s brief necessarily implicate substantive reasonableness concerns, even if some of the irregularities with his sentence could technically fall under the heading "procedural error.” Compare Gall v. United States, 552 U.S. 38, 51, 128 S.Ct. 586, 597, 169 L.Ed.2d 445 (2007) ("failing to consider the § 3553(a) factors” is procedural error), with Irey, 612 F.3d at 1189 (failing to consider relevant Guidelines factors, giving irrelevant factors significant weight, or committing a clear error of judgment in considering the factors is substantively unreasonable).

. And, as discussed in more detail in Part I.C., it is not the mere fact that the district court varied from the Guidelines on remand that draws my criticism; rather, it is "the degree” and "extent” of the variance with which I am properly concerned. See Gall, 552 U.S. at 47, 128 S.Ct. at 595.

. In reaching our conclusion in Valdes, we relied on United States v. McVay, 447 F.3d 1348, 1357 (11th Cir.2006), which was subsequently abrogated by the Supreme Court, see Gall, 552 U.S. at 46, 128 S.Ct. at 594. But when Valdes appealed the sentence imposed on remand, we had the opportunity to clarify that, even after Gall, a defendant's “criminal history alone would not justify an upward departure as such behavior is accounted for through [the defendant’s] criminal history category.” United States v. Valdes, 298 Fed.Appx. 927, 930 (11th Cir.2008) (per curiam) (emphasis added).

. The Majority insists that I place an unreasonable burden on district courts by expecting them to know the characteristics of the "average” category V illegal reentrant with a base offense level of 10. The burden I would place on sentencing courts is no different than— and, indeed, is essential to carrying out — the burden placed on sentencing courts by Congress, which directs them to consider the need to avoid unwarranted sentencing disparities between defendants with similar records. See 18 U.S.C. § 3553(a)(6). It would be impossible to avoid unwárranted disparities between defendants with similar records — such as, for example, defendants in the same criminal history category — without having some idea what the typical, "heartland,” "mine-run” category V criminal was like. By insisting that district courts consider the "average” defendant with a particular offense level and criminal history category, I insist only that district courts use their common sense and experience to ensure that defendants with similar records who commit similar crimes are sentenced similarly. This calls on district court judges to use good judgment, not to conduct a statistical analysis.

. Irey candidly recognizes the internal tension in the rule that the reason for a variance must be sufficiently compelling to support the degree of the variance but that a proportionality requirement is prohibited. See 612 F.3d at 1186-87 &n. 14.

. Rosales-Bruno was convicted of illegal reentry in violation of 8 U.S.C. § 1326(a). Subsections (b)(l)-(2), which provide for enhancements based on prior convictions, are sentencing enhancements, not different crimes.. See, e.g., Almendarez-Torres v. United States, 523 U.S. 224, 226-27,-230, 118 S.Ct. 1.219, 1222, 1224, 140 L.Ed.2d 350 (1998) *1286 (describing § 1326(b) as "a penalty provision” that "does , not define a separate crime”).

.The Majority accurately observes that illegal reentry under 8 U.S.C. § 1326 is subject to a two-year maximum sentence, but that, pursuant to § 1326(b)(1), the statutory maximum increases to ten years for illegal reentrants like Rosales-Bruno who were deported following a felony conviction. Again, however, the Guidelines account for Rosales-Bruno’s prior felony conviction, as evidenced by the fact that the upper end of his advisory range, 27 months, exceeded the statutory maximum for a simple violation of § 1326 without a sentencing upgrade under § 1326(b)(1). So, it is perfectly clear that the applicable Guidelines range was already adjusted to reflect the increased seriousness of Rosales-Bruno’s offense. And it is well worth noting that Rosales-Bruno’s illegal reentry fell into the statutory mid-range of seriousness, not at the upper end of the spectrum as one might expect in a case where the district court imposed such a massive upward variance. Compare 8 U.S.C. § 1326(b)(1) (punishing illegal reentry following deportation for a felony to a maximum of 10 years' imprisonment), with § 1326(b)(2) (punishing illegal reentry following deportation for an aggravated felony to a maximum of 20 years’ imprisonment).

. Adjusting only for his prior felony conviction, Rosales-Bruno’s offense level was 8, which carries advisory ranges beginning at 0-6 months, depending on criminal history category.

. I do not mean to suggest that Rosales-Bruno deserved a downward variance, but there are more facts in the record to support a downward variance than to support trebling the Guidelines. That is because, unlike the *1287 aggravating circumstances counting against Rosales-Bruno (his criminal history), the mitigating circumstances (his seeming desire to be in the same country as his daughter and source of employment as well as his decreasing pattern of criminal behavior) are not necessarily factored into the Guidelines range.

. Judge Barkett (now retired) identified the same problem even before Irey was decided. In United States v. Docampo, she explained that "we essentially pose two separate questions: (1) Is the sentence enough punishment? and (2) Is the sentence too much punishment? Appellate courts have had no difficulty finding unreasonableness when asking the former. ... Our appellate sentencing review should not develop into a one-way ratchet upwards.” 573 F.3d 1091, 1110 (11th Cir. 2009) (Barkett, J., concurring, in part, and dissenting, in part).

. In a sign that others have noticed the dichotomy Judge Martin described in our *1288 case law, her concern is echoed in scholarly commentary. See Adam Shajnfeld, The Eleventh Circuit’s Selective Assault on Sentencing Discretion, 65 U. Miami L.Rev. 1133, 1133 (2011) (claiming that we "unfairly wield[] a single-edged sword, capable of striking what is perceived as an unduly lenient sentence yet impotent against an unduly harsh one”); see also Daniel N. Marx, Unwarranted Disparity in Appellate Review of Non-Guidelines Sentences for Substantive Reasonableness, 29 Westlaw J. White-Collar Crime 1, 6-7 (2014) (describing the disparity in appellate review of sentences, including Judge Martin's commentary on the Eleventh Circuit’s approach).

. I reiterate that my position would not deprive sentencing courts of the substantial discretion they enjoy post-Booker. I agree with our decision in Early to affirm the sentence imposed even though it was more than two times the upper end of the Guidelines range.

. The Majority opinion suggests that there is an important distinction to consider between substantive and procedural reversals; that the remand in Valdes based on "the reasons discussed” is a substantive ground, whereas remand based on "the discussion of the reasons” would have rendered it procedural. My point is not to quibble over labels. Instead, my point is that remanding because "the reasons discussed were inadequate” leaves open the possibility that there were other reasons that were not discussed that could be adequate to support the sentence imposed. See Valdes, 500 F.3d at 1292. In other words, on remand, the district court was free to impose the same sentence, provided that additional reasons were discussed or developed in the record. And it is worth noting that, although the district court did not impose the exact same sentence on remand, it again varied significantly above the Guidelines, and we affirmed. See Valdes, 298 Fed. Appx. at 930-31 (affirming an 84-month sentence, 33 months above the upper end of the Guidelines range). Thus, I reiterate: we have not expressly vacated a sentence because it was too long or too harsh, but we have done so because a sentence was too short.

. Chief Judge Carnes looks to Mark Twain for wisdom — but I recall that Mr. Twain also once proclaimed, “There are three kinds of lies: lies, damned lies, and statistics.” See Mark Twain, Chapters from My Autobiography — .XX, 186 N. Am. Rev. 465, 471 (1907) (attributing the expression to Benjamin Disraeli). The point being that accurate data can be manipulated to make invalid points. Accordingly, I have no reason to question the accuracy of the sentencing data relied on by the Majority opinion. Instead, I dispute that a recitation of district court sentencing statistics proves what the Majority claims about how our precedent affects district court decisions. Contrary to Chief Judge Carnes’s implications, statistics about what the district courts do in sentencing does absolutely nothing to counter my concern that, on appellate review, we are applying different principles depending on the sentence before us.