**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 25-10431

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

ANTOINE D. WILSON,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 3:24-cr-00019-TKW-1

————————————

Before JILL PRYOR, BRANCH, and TJOFLAT, Circuit Judges.

PER CURIAM:

Antoine Wilson appeals his sentence of 300 months' imprisonment for conspiracy to distribute five kilograms or more of cocaine.[1] He argues that the District Court erred by imposing a four-level leadership enhancement and that it abused its discretion by imposing a consecutive sentence. We affirm.

## I.

Wilson was found guilty by a jury for conspiracy to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii), and 846. He was serving a 15-year sentence for a different federal drug conviction when he committed the instant offense, and he had about 6.5 years left to serve at the time of sentencing. The presentence investigation report stated that, in the instant offense, Wilson coordinated with several co-conspirators to sell "tens of thousands of dollars of cocaine" while he was incarcerated. During its investigation, law enforcement wiretapped the phones of two of Wilson's co-conspirators, Marcus Spears and Ramon Singleton. The wiretaps revealed that Wilson connected Spears and Singleton to a cocaine supplier in Texas known as Migo and that Wilson coordinated cocaine deliveries via a cellphone he managed to secrete while incarcerated. Over a period of about six to seven months, the co-conspirators brought four shipments of

---

[1] He was also sentenced to 96 months' imprisonment for using a telephone in furtherance of a drug felony, to be served concurrent with the conspiracy sentence. Wilson's appeal concerns only the 300-month sentence.

cocaine, totaling approximately 50 kilograms, from Texas to Florida by semitruck.

Having pleaded guilty to his charges for this conspiracy, Spears testified that Wilson was a middleman between Spears and Migo, arranging the shipments with Migo and then communicating payment and delivery information to Spears. Spears explained further that "Mr. Wilson put [Spears and Migo] together," and that they "could not get anything from Amigo [sic] without going through Mr. Wilson." He also testified that Wilson's cut of the profits would be either delivered to Wilson's sister or placed in his commissary account and that he had delivered approximately $15,000 in cash to Wilson's sister. Wilson's sister later testified that Spears did give her money for Wilson but that it was much less than $15,000. She recalled four Cash App transfers, totaling $650[2]; two to three cash transfers, ranging from $150 to $200 each; and a check for $1,500 from Spears's trucking company.

Singleton, also having pleaded guilty to his own charges for this conspiracy, testified that Wilson recruited him to be a contact for Migo, "to basically be a face and a voice for the source to make sure the cocaine delivered to Pensacola." He explained that Migo would call Wilson when a shipment was coming and Wilson would tell Singleton or Spears, that Migo would also tell Singleton directly that a shipment was coming, and that Wilson would "direct[] everything to make sure the cocaine got here safe and the money got

---

[2] She recalled one additional Cash App payment from Spears specifically for her mother's birthday.

back to Migo safe." Singleton further explained that Wilson worked out the price of the cocaine with Migo and handled any discrepancies between the money and the cocaine. When asked what Wilson's role was in the conspiracy, Singleton described Wilson as "like the head of it."

Wilson's presentence investigation report calculated a base offense level of 32 and added a four-level enhancement for being an organizer or leader in the conspiracy, which had five or more participants,[3] for a total offense level of 36. It also calculated Wilson's criminal history category as III. This resulted in a Guidelines range of 235 to 293 months' imprisonment. However, because Wilson had two prior serious felony drug convictions,[4] he was subject to a statutory minimum mandatory sentence of 300 months' imprisonment, so the guideline became 300 months.

Wilson objected to the four-level enhancement, arguing that he was not a leader or organizer because he could not exert control or dominion over his co-conspirators while in prison. He maintained that he "never called the shots," that Singleton and

---

[3] The parties do not dispute that five or more participants were involved in the conspiracy.

[4] One was a 2005 federal conviction for conspiracy to distribute and to possess with intent to distribute 500 grams or more of cocaine, for which he was sentenced to 36 months' imprisonment. The other was a 2019 federal conviction for conspiracy to possess with intent to distribute five kilograms or more of cocaine and possession with intent to distribute 500 grams or more of cocaine, for which he was sentenced to 180 months' imprisonment. The latter is the sentence he was serving when he committed the instant crime.

Spears were the leaders "on the streets," and that Singleton and Spears went to Wilson "only when they had problems." He also maintained that he did not profit much from the conspiracy, making only $2,000 at best; that Spears and Singleton knew each other before the conspiracy started; that Singleton and Migo were in direct contact; and that Singleton and Wilson never communicated.

The Government responded that the enhancement was warranted. It pointed to the testimony by the co-conspirators that Wilson orchestrated the operation from prison as well as Wilson's own statements telling his co-conspirators what to do. These statements included uncontested messages that Wilson sent Spears before law enforcement wiretapped Spears's phone. One was "You holla at Mond and let dude know he Giving that to Money for Toine cause I told crazy man Money his name" and another was "Let P know he grabbing it for Money for Toine." Mond was a nickname for Singleton, Toine was a nickname for Wilson, crazy man was a nickname for Migo, and P was the driver. The statements also included wiretap intercepts between Spears and Wilson in which Wilson told Spears "Oh, just tell 'em to text them or something" and "You need to tell him. Just text him. That's all." The Government also explained that, even if Wilson's profit was $2,000, that was still significant when you consider that Wilson was in prison at the time as it's "just not reality" to put five- or six-figure sums in someone's prison account.

The Court ruled that the enhancement was applicable. It explained that, though Wilson's incarceration "necessarily limit[ed]"

the way he could participate in the conspiracy, he still maintained a leadership role. He recruited Singleton, obtained an amount of money that was substantial for someone in prison, and "exert[ed] decision-making authority" over Spears and Singleton by "tell[ing] them] what to do to the extent he could while in prison." The Court then explained that the question was irrelevant anyway, because the 300-month statutory mandatory minimum applied.

To that, Wilson explained that, though the Court had to impose the 300-month minimum, it had the discretion to impose it concurrent with the 15-year sentence Wilson was already serving, which had about 6.5 years left. He maintained the Guidelines range was relevant for that decision.

Wilson's sister then testified about Wilson's personality and family life, and Wilson himself stated that his motivation for engaging in the present conspiracy was to help a friend. The Court noted that while there were mitigating factors here, the fact that Wilson committed the crime while incarcerated could not be ignored and that deterrence was a big concern. It also explained that, though it could impose a concurrent sentence, the Guidelines "put their thumb on the scale" toward a consecutive sentence to "punish[ the] new conduct as new conduct, without regard to the existing conduct." The Court ultimately imposed a consecutive sentence. Wilson timely appeals.

## II.

Wilson challenges both the leadership enhancement and the consecutive sentence. We discuss both in turn.

### A.

Wilson first argues that the District Court erred by imposing a four-level enhancement for being a leader in the conspiracy.

"With respect to Sentencing Guidelines issues, this Court reviews purely legal questions de novo, a district court's factual findings for clear error, and, in most cases, a district court's application of the guidelines to the facts with due deference." *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010) (internal quotation marks and emphasis omitted). The district court's determination of a defendant's role in the offense is a factual finding that we review for clear error. *United States v. Rodriguez De Varon*, 175 F.3d 930, 937 (11th Cir. 1999); *see also United States v. Grushko*, 50 F.4th 1, 10 (11th Cir. 2022). A factual finding is clearly erroneous if it leaves this Court with a "definite and firm conviction that a mistake has been committed," *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010), but it is not clearly erroneous when the factfinder chose between two permissible views of the evidence. *United States v. Saingerard*, 621 F.3d 1341, 1343 (11th Cir. 2010).

A defendant receives a four-level enhancement to his offense level where he "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). Whether a defendant was a leader depends on many factors, including:

> (1) the exercise of decision making authority, (2) the nature of participation in the commission of the offense, (3) the recruitment of accomplices, (4) the

claimed right to a larger share of the fruits of the
crime, (5) the degree of participation in planning or
organizing the offense, (6) the nature and scope of the
illegal activity, and (7) the degree of control and au-
thority exercised over others.

*United States v. Dixon*, 901 F.3d 1322, 1348 (11th Cir. 2018) (altera-
tion adopted); *see also* U.S.S.G. § 3B1.1, cmt. n.4. A defendant need
not meet every factor to be a leader, and thus warrant the enhance-
ment, but he ultimately must exert "some degree of control, influ-
ence, or leadership." *United States v. Martinez*, 584 F.3d 1022, 1026
(11th Cir. 2009) (internal quotation marks omitted).

Though, even if the district court did err in imposing an en-
hancement, a remand is not appropriate if "the reviewing court
concludes, on the record as a whole, that the error was harmless,
i.e., that the error did not affect the district court's selection of the
sentence imposed." *See Williams v. United States*, 503 U.S. 193, 203,
112 S. Ct. 1112, 117 L. Ed. 2d 341 (1992) (emphasis omitted). And
the Sentencing Guidelines direct the district court to apply the stat-
utory mandatory minimum where it is greater than the maximum
of the applicable Guidelines range. U.S.S.G. § 5G1.1(b). As such,
any error in the Guidelines calculation is harmless in that situation.
*See United States v. Chirino-Alvarez*, 615 F.3d 1344, 1346 (11th Cir.
2010).

Here, the District Court was required to sentence Wilson to
the statutory mandatory minimum of 300 months' imprisonment.
Therefore, the four-level enhancement, and overall Guidelines

calculation, had no effect on the sentence imposed. Any error in the calculation would have been harmless in that regard. We could end our analysis there, but, because Wilson maintains that the calculated range impacted the Court's decision of whether to impose the 300-month sentence consecutive to or concurrent with the 15-year sentence he was already serving, we analyze the issue below. We find no error.

Here, Wilson recruited accomplices, acted as the middleman between them, and told them what to do. All three of these actions necessarily involve organization, planning, and control. And even if Wilson received little money for his leadership, money is only one possible indicator of leadership. It is not required for someone to be a leader. Recruiting, coordinating, and directing people are, at bottom, exerting influence over them. These actions are leadership, so they warrant the leadership enhancement.

Wilson argues that the District Court modified the leadership test—that the Court lowered the bar for what constitutes leadership by analyzing his actions against the backdrop of him being in prison at the time. While the District Court did discuss Wilson's actions as being leadership "commensurate with [Wilson's] location," we find that the actions constitute leadership regardless. As above, to recruit people, coordinate between them, and tell them what to do, you must necessarily exert control over them. Thus, even if Wilson were not in prison, the actions he engaged in would have been leadership. The Court did not err in finding that Wilson was a leader and in applying the leadership enhancement.

### B.

Wilson also argues that the District Court abused its discretion by imposing a consecutive sentence.

We review a district court's imposition of a consecutive sentence for abuse of discretion. *United States v. Covington*, 565 F.3d 1336, 1346 (11th Cir. 2009). This is a deferential standard that considers the totality of the circumstances. *United States v. King*, 57 F.4th 1334, 1337 (11th Cir. 2023). And we will vacate a sentence as substantively unreasonable "only if we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors." *United States v. Goldman*, 953 F.3d 1213, 1222 (11th Cir. 2020).

The district court has the discretion to decide whether its sentence should "run concurrently or consecutively with respect to other sentences that [it] impose[s], or that have been imposed in other proceedings" as long as its exercise of discretion is guided by the § 3553(a) factors. 18 U.S.C. § 3584; *Setser v. United States*, 566 U.S. 231, 236, 132 S. Ct. 1463, 1468 (2012). These factors include, among others, the history and characteristics of the defendant; the nature and circumstances of the offense; and the need to deter criminal conduct, impose a just punishment, and reflect the seriousness of the crime. 18 U.S.C. § 3553(a). After those factors are considered, the only other limit on the district court running sentences consecutively is that "the resulting total sentence must be reasonable." *Covington*, 565 F.3d at 1347. Though not dispositive, a sentence being below the statutory maximum, *United States v.*

*Dougherty*, 754 F.3d 1353, 1364 (11th Cir. 2014), and being within the Guidelines range are both indicators of reasonableness. *United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008).

Additionally, the Sentencing Guidelines advise that "[i]f the instant offense was committed while the defendant was serving a term of imprisonment . . ., the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment." U.S.S.G. § 5G1.3(a). This is a direction that a district court is not required to follow but still must consider when imposing its sentence. *United States v. Henry*, 1 F.4th 1315, 1326 (11th Cir. 2021).

Wilson's argument here depends on his argument above. He maintains that the Court abused its discretion, and imposed a substantively unreasonable sentence, by not considering the correct Guidelines range when it directed that Wilson's sentence be consecutive. In other words, he maintains that the Court improperly applied the four-level leadership enhancement; that, without the enhancement, his Guidelines range was 151–188 months' imprisonment; and, consequently, running his sentences consecutively put him "reasonably outside" the correct Guidelines range and, thus, made his total sentence unreasonable.[5]

---

[5] Wilson had roughly 6.5 years left on his existing sentence. Running the sentences concurrently would have given him about 18.5 years, or 222 months, of additional prison time.

We reject this argument. First, as explained above, the four-level enhancement was properly applied to Wilson. Second, though a sentence falling within the relevant Guidelines range is an indicator of reasonableness, it is not dispositive. A sentence does not have to be within the Guidelines range to be considered reasonable.

And this sentence was reasonable. The Court heard relevant aggravating and mitigating evidence. It explained that the location of where the crime was committed was something that could not be ignored, that was not accounted for under the Guidelines range, and that warranted a high sentence. And, finally, it considered the need to deter both Wilson and others in prison from engaging in this conduct in the future. The Court then weighed everything together and determined that a consecutive sentence was warranted. It explained that though Wilson has "things in [his] background that are mitigating," ultimately, an additional 18.5 years in prison would not "capture the fact" that Wilson committed this crime while incarcerated and, considering that he was already serving a 15-year sentence when he committed this crime, would not deter this behavior in the future. The Court properly analyzed and weighed the evidence and various § 3553(a) factors. It simply arrived at a conclusion different from what Wilson wanted. That does not mean the sentence imposed was unreasonable. Indeed, "[t]he decision about how much weight to assign a particular sentencing factor is committed to the sound discretion of the district court." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015).

## III.

The District Court did not err in applying the four-level enhancement, and it did not abuse its discretion by imposing a consecutive sentence. We affirm.

**AFFIRMED.**