**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 24-13888

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

ANNA MICHELLE LA RUE,

*Defendant-Appellant.*

————————————————

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 5:23-cr-00048-LCB-HNJ-1

————————————————

Before BRANCH, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

Anna La Rue appeals her 96-month sentence imposed after she pleaded guilty to bank fraud.  She argues that her sentence, which was an upward variance from the guidelines range, is

substantively unreasonable because the district court improperly weighed the 18 U.S.C. § 3553(a) factors, relied too heavily on information already accounted for by the guidelines, and failed to account for mitigating circumstances. She also argues that her sentence created a substantial risk of sentencing disparities when compared with statistics for other defendants sentenced for similar offenses. After review, we affirm.

## I.    Background

In 2023, a grand jury indicted La Rue on 10 counts of bank fraud based on conduct that occurred when she was employed as an office manager at an Alabama law firm between 2009 and 2021. She entered an open plea of guilty to one count of bank fraud in exchange for the government agreeing to dismiss the remaining counts.

Prior to sentencing, the United States Probation Office prepared a presentence investigation report ("PSI"). The PSI indicated that La Rue worked as an office manager for an Alabama law firm, and, for years, she made unauthorized deposits into her personal account, totaling at least $4.4 million. She then used these funds to purchase property, various luxury vehicles,[1] and a boat;

---

[1] La Rue purchased a brand new 2018 GMC Sierra 2500 HD pickup truck; a 2019 Lexus RC-F; a 2020 GMC 2500 Denali; a 2020 Cadillac Escalade Platinum Edition; a 2020 Montana HC 377FL fifth-wheel travel trailer; and at least two Polaris four-wheelers.

make luxury renovations on her home;[2] purchase luxury designer goods; and fund both domestic and international vacations. La Rue received an 18-level guidelines enhancement because the loss amount was more than $3.5 million but less than $9.5 million. *See* U.S.S.G. § 2B1.1(b)(1)(J).    She also received a two-level enhancement because she abused a position of trust as an employee of the law firm. *See* U.S.S.G. § 3B1.3. After a three-point reduction for acceptance of responsibility, La Rue's total offense level was 22 and her criminal history category was I, which resulted in an advisory guidelines range of 41 to 51 months' imprisonment. She faced a statutory maximum of 30 years' imprisonment.

In terms of La Rue's background, the PSI indicated that La Rue's parents had divorced when she was five and that her mother had remarried approximately six times during La Rue's childhood. One of her stepfathers sexually abused La Rue as a child, and she witnessed multiple men physically abuse her mother. Initially, her mother had not believed her allegations of sexual abuse, but eventually her mother witnessed the abuse firsthand and then divorced the man. La Rue did not have a relationship with her mother as an adult.

La Rue attended some college, but had to stop attending after her father became ill. She worked at the law firm as an office

---

[2] For instance, La Rue "re-grad[ed] the back of the property, finish[ed] the basement, extend[ed] the back deck, hir[ed] a professional interior decorator, buil[t] a home gym, install[ed] a home theater system, and install[ed] a commercial-grade playground with artificial turf."

manager for 12 years.  La Rue married her husband in 2012, and they had eight-year-old twins.  La Rue denied any mental health or substance abuse issues, but in terms of medical issues, she had her thyroid removed due to thyroid cancer.

La Rue filed a motion requesting a downward variance of 33 months' imprisonment.  She maintained that such a variance would account for her history and background, particularly the sexual and physical abuse she suffered as a child; the fact that she was the primary caregiver to her twin boys, one of whom suffers from chronic medical issues; and the fact that she had accepted responsibility for her actions.  She noted that "much of the money she took she then used to create" for her children the "kind of picturesque life she wished she had had as a child."

At sentencing, the district court adopted the PSI and heard arguments from the parties concerning the appropriate sentence.  La Rue's counsel emphasized that a downward variance was appropriate given La Rue's genuine remorse and acceptance of responsibility; her background and history; her father's poor health; and her need to care for her twins and her husband, who had recently undergone back surgery.  La Rue then made a statement to the court emphasizing the harm her actions had already done to her family, and that since she left the law firm, she had spent her time caring for her children, her father, and volunteering at her church and in the community.  She noted the abuse and unstable home she suffered as a child.  She also explained that, just a few days earlier, her husband had undergone

emergency back surgery and there was no one available to help him recover or to help care for the children. She apologized for her actions and the pain her actions had caused everyone.

The government requested a sentence of 41 months' imprisonment at the bottom of the guidelines range, emphasizing that this offense was calculated, serious, and went on for several years. The government pointed out that this crime was not one of necessity, but one of "greed," and that the money had been used "to purchase items that most people would dream of owning, luxury vehicles; an amazing house; [and] international vacations." The government also argued that a guidelines sentence was necessary to promote respect for the law and provide general deterrence.

The managing partner of the law firm testified. He explained that the firm was medium-sized with approximately 30 employees. The office manager role was a key position of trust because that person had access to all the personal data for employees, and took care of insurance and vacation for employees, and oversaw all the money that came in and out of the office. Indeed, the office manager had "carte blanche ability to write checks out of [the firm's] accounts." The managing partner explained that La Rue "manipulated" them from the very beginning because when she interviewed for the position in 2009, she stated that she came from a well-off family and she only wanted the job to occupy her time—a story they now knew was not true. And when she bought luxury vehicles or went on lavish vacations,

she told everyone at the firm that her wealthy father had funded those things, which was a lie. She doctored monthly financial reports to hide her theft by adding expenses to various budget items or falsifying line items. When questioned about certain expenses, she always had an explanation, including accusing the firm's partners or other employees of the firm of making a "mistake" or a "bad decision" that resulted in the expense, and if pressed she would "make herself cry." The managing partner also explained that La Rue experienced various health issues while at the firm and the firm had given her unlimited paid leave to deal with those issues, but the firm had since discovered that she had not had any health issues (including a claimed heart attack) and instead had charged bariatric surgery and plastic surgery on the firm's credit cards.

The managing partner stated that, after he hired an auditor because "things that Mrs. La Rue was saying weren't adding up," she stole boxes of documents to try and cover up her actions, and then she tried to blame other people in the office when the documents could not be located. He stated that his firm believed the total amount stolen was closer to $5.8 million, which would have gone to bonuses and profit-sharing for all employees, and new equipment for the office. Finally, he emphasized that she had damaged the reputation of the firm. He urged the court to consider a more severe punishment than 41 months' imprisonment.

Next, one of the law firm's new office managers, Sandra Miller, testified that she was hired in August 2021 to work with La

Rue. A few weeks after Miller started, La Rue was out on extended leave for a heart attack (which Miller later learned had not happened), and Miller was unable to log into the payroll system with the password La Rue provided. When Miller reset the password on a Friday afternoon, La Rue turned in her resignation the following Monday. A week after her resignation, Miller received one of the firm's credit card statements, and it contained "thousands of dollars in Amazon charges" made by La Rue. Miller then requested past credit card statements going back to 2009 and discovered hundreds of thousands of dollars of credit card fraud by La Rue. Miller cited the calculated, decades long fraud and the broken trust and requested the court issue the maximum sentence. Finally, another partner at the firm testified to the deception La Rue employed and stated that she was not a person to be trusted.

The district court varied upward from the guidelines range and imposed a sentence of 96 months' imprisonment to be followed by three years of supervised release. The district court emphasized that an upward variance was warranted due to the nature and circumstances of the offense, particularly that La Rue took money to "enrich[] [her]self" at the expense of others. The court noted that La Rue was "depraved, mendacious, and manipulative" and that the guidelines did not adequately reflect the seriousness of her conduct. The court explained that it had considered the § 3553(a) factors, and that the sentence reflected the seriousness of the offense, promoted respect for the law, provided deterrence, and protected the public. La Rue objected to the sentence. This appeal followed.

## II.    Discussion

La Rue argues that her sentence is substantively unreasonable because the district court improperly weighed the § 3553(a) factors, relied too heavily on facts already accounted for by the guidelines, and failed to take into account La Rue's mitigating personal history and characteristics. She also argues that her sentence created unwarranted sentencing disparities when compared with statistics for other defendants sentenced for similar offenses. We disagree.

We review the substantive reasonableness of a sentence under a deferential abuse of discretion standard, asking whether the sentence is reasonable in light of the totality of the circumstances. *Gall v. United States*, 552 U.S. 38, 51 (2007). A district court "imposes a substantively unreasonable sentence only when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015) (quotations omitted). "A district court commits a clear error of judgment when it weighs the § 3553(a) sentencing factors unreasonably." *United States v. Butler*, 39 F.4th 1349, 1355 (11th Cir. 2022). The burden rests on the party challenging the sentence to show "that the sentence is unreasonable in light of the entire record, the § 3553(a) factors, and the substantial deference afforded sentencing courts." *Rosales-Bruno*, 789 F.3d at 1256.

The district court must issue a sentence that is "sufficient, but not greater than necessary" to comply with the purposes of § 3553(a)(2), which include the need for a sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter criminal conduct, and protect the public from future criminal conduct. 18 U.S.C. § 3553(a)(2). In determining the appropriate sentence, the district court must also consider the "nature and circumstances of the offense and the history and characteristics of the defendant"; the guidelines range; the "kinds of sentences available"; "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; and "the need to provide restitution." *Id.* § 3553(a)(1), (3)–(4), (6)–(7). When evaluating the § 3553(a) factors, a court may properly consider information that is already accounted for in the guidelines. *See United States v. Dougherty*, 754 F.3d 1353, 1362 (11th Cir. 2014) ("The district court may consider facts that were taken into account when formulating the guideline range for the sake of a variance.").

The weight given to a particular § 3553(a) factor "is committed to the sound discretion of the district court," and it need not give "equal weight" to the § 3553(a) factors. *Rosales-Bruno*, 789 F.3d at 1254 (quotation omitted). "We will not second guess the weight given to a § 3553(a) factor so long as the sentence is reasonable under the circumstances." *Butler*, 39 F.4th at 1355.

"Upward variances are imposed based upon the § 3553(a) factors." *Id.* No presumption of reasonableness or

unreasonableness applies to a sentence that lies outside the advisory guidelines range. *Id.* "When imposing a variance, a district judge must give serious consideration to the extent of any departure from the [g]uidelines and must explain [his] conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications." *Id.* (quotations omitted). In reviewing the reasonableness of such a sentence, we "may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Gall*, 552 U.S. at 51.

We will "vacate the sentence if, but only if, we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (quotations omitted).

Here, the district court did not abuse its discretion in varying upward from the applicable guidelines range of 41 to 51 months' imprisonment and imposing a sentence of 96 months' imprisonment. The district court explained that an upward variance was appropriate because of the nature and circumstances of the offense and the fact that, in the court's view, the guidelines did not adequately account for the serious nature of the offense. La Rue argues that the district court placed too much weight on the amount of money stolen and her deceitful behavior because this

information was already accounted for by the guideline enhancements, but her argument is unpersuasive. As noted previously, when determining whether to vary from the guidelines, a court may properly consider information that is already accounted for by the guidelines. *Dougherty*, 754 F.3d at 1362; *see also Butler*, 39 F.4th at 1355 (explaining that a court may "impose an upward variance if it concludes that the [g]uidelines range was insufficient" and failed to adequately account for certain information). The district court acted within its discretion in giving more weight to certain sentencing factors over others and provided sufficient justifications for the variance. *See Rosales-Bruno*, 789 F.3d at 1254. Moreover, although the district court did not mention La Rue's mitigating personal history and background, it clearly considered this information because it listened to the parties' lengthy arguments on these points and stated that it considered the § 3553(a) factors. *See Butler*, 39 F.4th at 1356 ("A district court's failure to discuss mitigating evidence does not indicate that the court erroneously ignored or failed to consider the evidence. Rather, a district court's acknowledgment that it has considered the § 3553(a) factors and the parties' arguments is sufficient." (alteration adopted) (quotations and citation omitted)). In sum, although La Rue quarrels with how the district court weighed the relevant § 3553(a) factors, "[w]e will not second guess the weight" the district court gave the § 3553(a) factors. *Id.* at 1355.

Additionally, La Rue cites various statistics regarding sentences for similar offenses and argues that the upward variance she received created unwarranted sentencing disparities because

the average term of imprisonment received based on these statistics was 33 to 36 months' imprisonment.  However, it is not enough for La Rue to rely on statistics and "simply compare" her sentence to those of other defendants convicted of similar offenses. *United States v. Azmat*, 805 F.3d 1018, 1048 (11th Cir. 2015) ("One needs to have more than the crime of conviction and the total length of the sentences to evaluate alleged disparities.").  Rather, "[t]he underlying facts of the crime and all of the individual characteristics are relevant" to a sentencing disparity claim. *Id.*; *see also United States v. Docampo*, 573 F.3d 1091, 1101 (11th Cir. 2009) ("A well-founded claim of disparity, however, assumes that apples are being compared to apples." (quotations omitted)).  La Rue has not carried her burden to identify any specific defendant who was similarly situated to her who received a lesser sentence.

Finally, we note that La Rue's 96-month sentence is well below the statutory maximum of 30 years' imprisonment, which is another indicator of reasonableness. *See United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008) (explaining that a sentence that is below the statutory maximum is an indicator of reasonableness). Accordingly, we are not "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Irey*, 612 F.3d at 1190 (quotations omitted). Consequently, we conclude that La Rue's sentence is substantively reasonable, and we affirm.

**AFFIRMED.**